WILLIAM E. STRONG, APPELLANT, vs. LAKE WEIR CHAUTAUQUA AND LYCEUM ASSOCIATION, APPELLEE.

1. Under the mechanics' lien law of 1885, providing that the liens "shall be enforced by attachment in manner provided by law," the reference is to the general attachment law of the State, and not to attachments authorized in special cases.

2. In the affidavit for the attachment under this act of 1885 it is not required that any of the grounds of attachment in the general law shall be set forth, but only that the facts which constitute the lien should appear as ground therefor, and that otherwise it should conform to that law.

3. The remedy provided relates to the "manner" of obtaining an attachment—that is, by appropriate affidavit and bond.

4. An attachment bond is not insufficient in respect to the require
ment that it shall be "in double the debt or sum demanded,"
because the amount demanded does not appear in the bond, if it
is in fact in double that amount, and so shown by the affidavit.

Appeal from the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the
court.

*Badger & McConathy* for Appellant.

*Bullock & Burford, R. L. Anderson* for Appellee.

In the court below appellee, the defendant, moved the
court to dissolve the attachment in said cause on account
of the insufficiency of the affidavit and bond upon which
the writ of attachment issued.   On a hearing of the motion
the court sustained the same and dissolved the attachment.
This ruling of the court is assigned for error by the appel-
lant, and is the subject-matter of this appeal.

Plaintiff in court below sought to enforce lien by attach-
ment under chapter 3611, laws of Florida, acts of 1885,
for work and labor performed and materials furnished in
the erection of certain buildings on the attached property
by virtue of a contract between plaintiff and defendant.

The issues presented involve an interpretation of the act
of 1885 in connection with the mechanic lien laws which
existed prior to the passage of said act and the general at-
tachment laws of the State.

The cases enumerated in sections 4 and 5 of chapter 3611
evidently refer to the enforcement of liens upon personal
property, and the liens provided for under these sections
exist only when the articles are delivered to the purchaser
or person having such article or articles repaired, *with a
written stipulation for a lien.*   Such article so delivered shall

at any time within ninety days thereafter be subject to attachment " *upon an affidavit of the facts before a Justice of the Peace.*" The inference deduced from an examination of these sections is that they apply exclusively to personal property, and the affidavit is required to be made before a Justice of the Peace, because claims arising under said section will in the great majority of instances be within the Justice's jurisdiction. These are the only sections of said chapter which prescribe in positive terms the character of the affidavit required, and the affidavit therein referred to applies only to the cases enumerated in said sections.

Section 1 specifies the character or classes of persons who have liens under the act and includes " mechanics and all other persons performing labor upon or furnishing materials for the construction or repair of any building," etc.

Section 9 provides that the liens created by the act " shall be enforced by attachment obtained in manner provided by law," etc.

What is the manner provided by law for obtaining attachments? McC.'s Dig., p. 113, secs. 14 and 15, provided the manner before the passage of the act of 1885, now under consideration, and required an affidavit that the party against whom the attachment is applied for is actually removing his or her property beyond the limits of the State, or is fraudulently disposing of, or secreting the same, etc., and also required the party to enter into bond with at least two good and sufficient securities in at least *double the debt or sum demanded,* etc.

The affidavit and bond is a prerequisite to the issuance of the writ. Section 6, of the act of 1885, provides that before an attachment can issue under section 4 of said act, a bond must be issued and filed *in double the value of the article or articles attached.*

The clause in section 9, " shall be enforced by attach-

ment obtained in manner provided by law," in our opinion clearly referred to the law as it existed prior to the passage of the act in all such cases as were not expressly provided or in the act itself; otherwise some such exression as " shall be enforsed by attachment obtained in manner provided by sections 4 and 5 of this act" would have been employed to express such an intention. But in either aspect of the case, the bond or affidavit in this case is fatally defective, as neither the general attachment law, McC.'s Dig. p. 113, sections 14 and 15, nor the provisions of the act of 1885, have been complied with.

It will be observed that the affidavit in the case simply sets forth the amount of the debt demanded, the circumstances under which it was contracted, the description of the property upon which the work was done, and in the erection of which the materials were furnished, the time defendant was employed and the materials furnished (between the 1st day of January, 1887, and the 24th day of February, 1887), that he filed a notice of his lien in the clerk's office of Marion county, Fla., on April 25th, 1887, and the same was recorded. This affidavit fails to set forth any of the statutory grounds which existed prior to the act of 1885, authorizing the issuance of an attachment. If section 4 of the act of 1885, applies alike to real and personal property then the affidavit is defective in that it fails to show that the property was turned over or delivered to the defendant *with a written stipulation of lien at the time of the delivery*, or that the attachment was applied for within 90 days from the date of the delivery; nor was the affidavit sworn to before a Justice of the Peace. But on the contrary it appears on the face of the affidavit that from the date of the completion of the work February 24, 1887, to the date of the application for attachment July 22, 1887, more than 90 days had elapsed.

When the test is applied to the bond that will also be found defective whether offered under section 15 of Mc-Clellan's Digest above referred to, or under section 6 of the act of 1885. We will first consider it with reference to the general attachment laws.

An inspection of the bond reveals the fact that it is in the sum of two thousand dollars, but it does not appear therefrom that this amount is *double the debt or sum demanded*, nor can the amount demanded be ascertained by reference to the bond alone. Appellant insists that the affidavit and other papers in the records can be referred to for the purposes of ascertaining the amount of the debt or sum demanded, and that an inspection of these papers would reveal the fact that the bond is in the proper amount, and for the authorities sustaining the position that other papers can be resorted to for material facts not disclosed in the bond, the following are cited by attorneys for appellant: West vs. Woolfolk, 21 Fla., p. 191; May and Sloan vs. Gamble, 14 Fla., p. 481.

In neither of these cases were the issues involved in this suit presented. In the first case the objection to the affidavit and bond was that they were not entitled in any court. In the second place the bond was objected to because each of the sureties justified to the extent of one-half the penalty of the bond instead of the full amount of the same. There is nothing in either of these cases from which it could be inferred that the bonds themselves did not show upon their faces that they were in double the amount demanded. The nearest approach to a decision upon the particular objection urged against the bond in this case that we have been able to find is that reported in case of Work & Son vs. Titus, 12 Fla., p. 628. In that case the affidavit for attachment was made by a party describing himself as agent of the plaintiffs in the action. In executing the required bond he

fails to describe himself as agent of the plaintiffs, the bond purporting to have been given by him in person. The court held the bond fatally defective, it not appearing therein that it was executed by the plaintiffs, their agent or attorney, as required by the statute. In that opinion the court said: " *The bond is separate and independent of the affidavit, and must stand or fall upon its own merits.*" If the affidavit cannot be referred to for the purpose of ascertaining whether the party to the bond was plaintiff's agent, the fact of agency appearing in the affidavit but not in the bond, *a fortiori,* it cannot be consulted to determine whether or not the bond is in double the amount of the debt or sum demanded. This should affirmatively appear from the bond itself.

We will now consider the bond with reference to the act of 1885. If our construction of this act be correct the bond referred to in section 6 applies only to the enforcement of liens against personal property coming within the provisions of sections 4 and 5 of said act; but for the sake of argument suppose we admit that section 6 applies to the enforcement of liens against lands and personal property alike, in what condition then do we find the bond in this case? The said section provides that the plaintiff shall file a *bond in double the value of the article or articles attached.* The bond fails to set forth the value of the attached property, or to make any reference thereto, and there is nothing in the bond itself to imply that $2,000.00, the amount thereof, is even equivalent to the attached property. But if the position contended for by appellant be correct, that the affidavit and other papers in the case can be referred to, we would find that the buildings erected on the attached property by the appellant alone cost more than the amount of the bond, not including the value of the lands.

It is evident that the appellant's attorneys attempted to form the affidavit under the act of 1885, by simply stating the " facts " as provided for in section 4, and it is equally evident that they attempted to draw the bond under the general attachment laws without reference to section 6 of the act of 1885.   Appellant's brief demonstrates this fact. The bond and affidavit must each comply with the same law.

It is contended that the clause " manner provided by law " in section 9, act of 1885, refers to the mode of obtaining the attachment rather than to the substance of the affidavit and bond, and sections 19, 24 and 31 of McClellan's Digest, pages 725, 726 and 728, are cited to illustrate the mode of obtaining attachments in other cases.   These sections are applicable only to the particular classes of cases therein enumerated, to-wit: enforcement of liens on ships, boats and other vessels, and lien of agricultural laborers on crops.   It would indeed be a strained construction to say that the clause referred to had reference to the sections enumerated.

Jurisdiction in attachment proceedings is extraordinary, "that is such as is provided by statute for exceptional cases and are available only under particular circumstances designated by statute."   21 Fla., 197; Drake on Attachments, sec. 85.

Appellant's attorney also refers to the case of McCarthy vs. Harris, decided at the June term, 1887, of this court, and reported in Nos. 15, 19, Vol. 2 of the Southern Reporter, page 819.   In this case the court dismissed the attachment upon the ground that the contract which was the basis of the lien, and the work and labor done and performed was prior to the passage of the act of 1885, and could not therefore be enforced under the provisions of said

act. The questions involved in the suit now before the court were not passed upon by the court.

The record of this case shows that appellant, plaintiff in court below, at the time of suing out the attachments also had summons *ad respondendum* issued, the same was served and the suit on the summons is still pending. As to whether appellant's lien can be eventually enforced under the acts of 1868 and 1877, it is not necessary to argue, as this question is not now before the court.

MAXWELL, J. : This appeal is from an order dissolving an attachment taken out by appellant to enforce a lien on property of appellee under the act of 1885, " to protect mechanics, laborers and material men, and to provide for the summary collection of moneys due them for wages or materials furnished." The proceeding was commenced by a præcipe and the issuing of a summons in assumpsit, and, in connection therewith, an affidavit and bond for attachment. A writ of attachment was issued and levied on the property described in the affidavit as the property on which appellant claimed a lien. Appellee moved to dissolve the attachment, because of the insufficiency of both the affidavit and the bond to authorize it, the court sustained the motion, and we are called on to determine whether this was error.

The statute in its first section, so far as that is applicable to this case, provides "that mechanics and all other persons performing labor or furnishing materials for the construction or repair of any building * * * shall have a lien, separately and jointly, upon the building * * they may have constructed or repaired, or upon any building * * for which they may have furnished material of any kind, and on the interest of the owner in the lot or land upon which such building may stand, to the extend of the value of any labor done or material furnished, or for both." For the en-

forcement of the lien thus given the 9th section provides that " the liens created by this act shall be enforced by attachment obtained in manner provided by law, and the courts of this State shall always be open to hear and determine such cases, give final judgment, and issue execution immediately, to the end that there shall be no delay in the enforcement and collection of such claims." Appellee insists that the attachment in this case was not so obtained, and that therefore it was properly dissolved. So far as the argument relates to any other law than the general attachment law, we do not deem it necessary to follow it. Clearly the reference in the words " provided by law " could not have been to any special proceeding in attachment prescribed for special cases, as, for instance, under our former statutes, cases of liens on ships or on agricultural crops, for if the proceeding in any special case had been in contemplation the act would have so declared. Nor, for the same reason, can the reference be to attachments authorized by sections four and five of the same act of 1885. The only sensible view is, that the reference is to the manner of obtaining an attachment under the general law on that subject. Not that the requirements of that law as to the subject-matter, or ground for the attachment, shall be observed in the affidavit, but that there shall be an affidavit setting forth the facts which create the lien, and the further fact that the amount claimed under it is due and unpaid. In other words, there must be an affidavit and bond as a basis for the attachment, as the general law requires, but the affidavit, instead of being limited to one or other of the grounds for an attachment under that law, must state the ground which under the act itself authorizes the attachment, the act in effect giving a new and additional ground. Any other view would lead to defeat of the very object intended by the summary remedy given, for in most cases the lien-creditor

could not make oath that his debtor is a non-resident, or is fraudulently disposing of his property, or removing it out of the State, &c., and it is not to be supposed that the Legislature meant any such futile requirement. We think the law on this subject is correctly expressed in Waples on Attachment, 111, as follows :

"The term attachment is used in several lien laws ; in those authorizing procedure in vindication of builders' and mechanics' liens, etc. ; in statutes authorizing seizures by landlords for rent ; but in all these attachments are in vindication of specific liens, and the suits are directed against specific property and are governed by principles applicable to them, though so different from those governing ordinary attachments that the suits must be treated as exceptional with respect to the affidavit.

"In suits upon specific liens, it is not required that the plaintiffs should show that the defendants are non-residents, or absconders or concealers of property, or that ordinary process would prove unavailing. Such suits, though called attachment proceedings, are like those instituted to enforce mortgage liens, in which the essential allegations of the plaintiff are that the debt is owing and that it is secured by mortgage—not that the defendant is absent, absconded or non-resident. Such attachment suits are, in this respect, directly the opposite of those usually so designated and may therefore well be styled exceptional. * * * *

"Another marked difference is that in the ordinary attachment suit, there is no description of the property to be attached required in the affidavit ; and, indeed, none could therein usually be made, since the plaintiff does not then know what property of the defendant the sheriff will find ; but, in attachments to enforce pre-existing liens, description is absolutely necessary."

Hence, the remedy must be understood as relating to the

" manner " of obtaining an attachment—that is, by appropriate affidavit and bond. The other incidents of the general law have no application. The proceeding is a statutory one, and no step can be taken unless distinctly and clearly authorized by the act.

Testing the affidavit by the rules of law we have laid down, we find that it sets forth the indebtedness of the Lake Weir Chautauqua and Lyceum Association to the plaintiff and that it is due ; that it arose under contracts between the parties by which the plaintiff was to furnish material and construct for the Association certain buildings, describing them, and also describing the land on which they were to be erected ; and that he furnished the materials and constructed the buildings, and has a lien on the same and on said land to secure him in payment of the money due, with interest thereon, and reasonable attorney's fees, and that he filed in the clerk's office a notice of said lien which was recorded there. As to the objection to this affidavit, that it is not drawn in accordance with the requirements in any special cases in which attachments were authorized at the time of the passage of the act of 1885, or in accordance with the requirements of section four, or section five, of that act, we have seen that the manner of obtaining attachments in those cases had no application to this case, and that the provisions of the general attachment law must govern ; and as to the objection that the provisions of the general law in respect to the affidavits are not followed, we have seen that this is not necessary in all particulars, and that by adapting the affidavit to the facts which, under the act of 1885, authorize an attachment, it will be sufficient. We think the affidavit in this case, the substance of which is given above, states the essential facts which constitute the ground for an attachment under the act, and that the objection to it was properly overruled.

In regard to the sufficiency of the bond, the objection, besides that of a non-compliance with the sixth section of the act of 1885, which is not applicable, is, that it does not appear therefrom that it is for an amount "double the debt or sum demanded." The statute does not require that the amount demanded should be stated in the bond, and while it would be more complete with such a statement, we do not perceive that it would be invalid, as not complying with the statute, if it is in fact double what is demanded. It is given in connection with the affidavit, a necessary part of which is a statement of the amount demanded, and from that could be easily obtained the fact if needed to ascertain the sufficiency of the bond. The defendant could not be prejudiced by the absence from the bond of the statement in question, for if the bond could not come up to the requirement as to amount the fact is before him in the affidavit, both being put on file together before the writ is issued, and before he can have occasion to consider the bond, and to have it adjudged insufficient, in case it is so. The controlling idea is, that if the bond is really for the required amount it answers its purpose, there being nothing in the statute to render it imperative that the test by which to judge of the sufficiency of the amount shall be incorporated in the bond.

This conclusion is in harmony with the ruling in Branch vs. Branch, 6 Fla., 315, where informalities in the affidavit and bond in a case of replevin under the statute were held to be defects that should not invalidate the proceeding, because they were defects remedied by the fact that the matter required to appear in a particular paper did appear in other papers in the proceeding, all these papers being indispensably connected together. And this is quoted in West vs. Woolfolk, 21 Fla., 189, a case of attachment, as authority for a similar ruling, the objection to the bond

there, where the clerk was required to approve it, being that his approval did not appear on it in writing. The court held that as the statute did not reqnire the approval to be in writing, the fact that the clerk issued the writ, another paper in the proceeding, was sufficient evidence of his approval. So, in the present case, we hold that the fact that the sum demanded appears in the affidavit, and the statute not requiring that it should appear in the bond, its non-appearance in the latter is no ground on which to condemn it as insufficient.

Against this conclusion is cited the case of Work & Son vs. Titus, 12 Fla., 628. That was a case of attachment where the person who acted in procuring it described himself in the affidavit as agent. The bond he gave was by himself in person, it nowhere appearing therein that he was acting as agent. The court held the bond insufficient and that the defect was not cured by what appeared in the affidavit, saying in the opinions that " the bond is separate and independent of the affidavit, and must stand or fall upon its own merits." It often happens that judges use language in their opinions which, while perfectly correct, applied to the case then in hand, is more far-reaching than discriminating law allows. In the pressure or haste of work there is some excuse for this, but it is to be lamented as the source of much of the confusion charged to the law. The language just quoted seems to be an instance of this. If taken in its broadest sense, it leaves no room for distinction between essentials and non-essentials, as to which Waples (in his work on Attachment, 118) says, " if there is strict con.pliance with the statute in essentials, and a substantial compliance with non-essentials, the attachment ought not to be quashed." In that case the question was whether reference could be made to the affidavit to show that the person making it as agent also executed the bond as agent,

though it did not purport to be so executed, and was in no-wise ambiguous, or uncertain as to the character in which it was made. Clearly it was not permissible in such a case to look outside of the bond to see who was the party to it. The statute required that it should be given by the party apply-ing for the attachment or by his agent or attorney, and the bond was entered into in the individual name of a person other than the applicant for attachment, without any indi-cation of agency. This was non-compliance with the stat-ute in matter of essential substance, and in that respect is to be distinguished from the case in 6th and 21st Fla., *supra*, and from the case at bar. Our view of the case is foreshad-owed in the language of this court in its comment thereon in the case of Tanner and Delaney Engine Company vs. Hall & Mobley, 22 Fla., on page 403.

The order dissolving the attachment is reversed, and the case will be remanded for further proceedings in accord-ance with this opinion.