W. H. WILSON, *Plaintiff in Error,* v. THE STATE OF FLOR-IDA, *Defendant in Error.*

1. The error, if any was committed by the court, in refusing to strike testimony was cured by subsequently striking it and directing the jury to disregard it.

2. The admission of testimony that could not possibly harm the accused under the facts admitted will not constitute reversible error.

3. The action of the court in overruling an objection to a pertinent question to a State witness, will not be reversed especially when the answer thereby elicited tended to help the accused.

4. On a trial for the embezzlement of a horse hired to drive in one county, it having been proven that the horse was driven into another county and left with a liveryman from whom the accused, a stranger, obtained money, the State may ask the defendant, who volunteers as a witness—"When you got that money from Mr. Adams and left that horse and buggy there with him, he being an entire stranger to you, did you tell him that this horse and buggy did not belong to you?" On the direct examination the witness had testified he had not told Adams the horse belonged to him (witness).

5. Questions directed to the defendant on cross-examination as to matters within his own breast, that offered opportunity for explanation of suspicious circumstances that are not answered nor pressed by the State, do not constitute ground for reversal.

6. Where in the argument of counsel to the jury no fact, not in evidence is assumed, this court will not scrutinize with nicety

the logical force of arguments assigned as ground for reversal, nor will the court below be reversed for refusal to interfere with the argument because it is illogical or not based on deductions reasonably inferable from the facts.

7. Instructions amounting to an affirmative charge for the accused are properly refused when the evidence supports a verdict of guilty. As to whether they may ever be proper in criminal cases, see *McCray v. State,* 45 Fla. 80, 34 South. Rep. 5.

8. On a trial for embezzlement it is proper to refuse to charge that if the jury should find certain facts the defendant was guilty of larceny and for that reason should be acquitted of the charge of embezzlement, when the facts in evidence are not sufficient to make out a case of larceny.

9. Instructions that pick out and emphasize certain phases of the evidence as to fraudulent conversion to the exclusion of other evidence on that point, or are predicated upon an isolated fact or part of the evidence not conclusive of the merits of the case, are properly refused.

10. Where a stranger who had hired a horse and buggy in another county goes to a liveryman to borrow money and saying: "I will leave the horse and buggy here with you and will return tonight or tomorrow and pay you the money," and getting the money leaves the horse and buggy and never returns, the question of whether a pledge or pawn was thereby intended is properly left to the jury under proper instructions.

11. Assignments not argued are treated as abandoned.

12. An instruction that has no possible relevancy to the issues of the case is properly refused.

13. When a horse and buggy are hired in the county of H. to be driven and used only in the county of H., but are driven into another county almost immediately, where they are left with a liveryman from whom the hirer, a stranger, borrowed money, and other evidences of a felonious intent are shown, the venue is sufficiently shown to be in the county of H., giving due weight to the finding of guilty by the jury and the approval of the trial court.

14. The evidence supports the verdict.

15. Where the statute defines the crime of embezzlement and provides that one convicted thereof "shall be punished as if he had been convicted of larceny," it has reference to the general law on the subject of "larceny" and not to special cases.

This case was decided by the court *En Banc*.

Writ of error to the Criminal Court of Record for Hillsborough county.

The facts in the case are stated in the opinion of the court.

*Macfarlane & Glen* for plaintiff in error.

*W. H. Ellis*, Attorney-General, for the State.

COCKRELL, J.—The plaintiff in error was convicted of the crime of embezzlement of a horse worth $105, and sentenced to the State prison for a term of three years.

There was evidence from which the jury might find that Wilson hired from one Miller at Tampa a horse and buggy to drive to Plant City, and to return the next day, for an agreed price of five dollars for the trip. Tampa and Plant City are both in Hillsborough county. After reaching Plant City Wilson continued on to Lakeland in Polk county, which he reached that night, and placed the horse in a livery stable there. As soon as he could find the liveryman he represented that he was in need of fifteen dollars to enable him to go to Orlando to see an uncle, and saying: "I will leave the horse and buggy here with you and will return to-night or to-morrow and pay you the money," secured from the liveryman to whom he was an entire stranger, the sum desired. Upon securing the money he went on to Orlando and thence to Sanford and into Marion county, where he was arrested sometime after. The Tampa man from whom the horse was obtained found it in Lakeland.

The first error assigned is that the court erred in denying the motion of defendant to strike the answer of the witness Miller that "I went to get my horse and had to pay $15.00 before I could come in possession of him." A sufficent answer to this assignment is found in the fact shown

Wilson v. State.—Opinion of Court.

by the record that this answer was subsequently stricken and the jury instructed to disregard it. The error, if any, was fully corrected below and no harm was done thereby. The next alleged error was also harmless. We do not see that the statement of the witness Miller that he drove his horse back to Tampa from Lakeland could possibly have injured the accused under the admitted facts of this record.

The third assignment is the refusal to permit the defendant to prove that his father offered to return Miller any expense he had been put to in the matter. We do not see what possible bearing on the innocence of the defendant such testimony could have, and there was no error in excluding it.

The next assignment is that the court erred in permitting J. Q. Adams, the Lakeland liveryman, to be asked, and to answer the question "would you have let him have the money if he had not left the horse and buggy with you?" to which the answer was "no sir, because I did not know him, but if he left the horse and buggy with me I was sure he would return and bring back my money." No motion was made to strike the answer. The State was endeavoring to show that the conversion was felonious and in this it had shown the hiring of the horse to go only to Plant City and the actual going to Lakeland in another county, the borrowing of the money from the liveryman there by defendant who was a total stranger and the leaving of the horse and buggy with the liveryman, and it was pertinent for the State to prove that this leaving was by way of pledge or pawn. The contract is to be gathered from the situation of the parties and the language used by them, and it was competent to show that one party thereto understood the transaction to have been a pledging of the property. Without determining whether the transaction was in law a pledge, it suffices here to say that the answer elicited tended rather to help the defense and could not therefore be considered reversible error.

The defendant was asked by the State: "When you got that money from Mr. Adams and left that horse and buggy there with him, he being an entire stranger to you, did you tell him that this horse and buggy did not belong to you?" The defendant on the direct examination had testified that he did not tell Mr. Adams that the horse and buggy were his (defendant's). There is no fact assumed in the question that was not admitted by the defendant. The concealment of the ownership of the horse was a material circumstance, and it was not improper for the State to set off against the defendant's statement that he had not claimed the horse as his, the further fact that he did not disclose that the horse was not his. The next assignment may well be considered in connection with this. The defendant was asked: "Did you not know at that time that if you had told Mr. Adams that you didn't own that horse and buggy that he would not have let you have the money?" and answered: "Why, I did not get any money on the horse; didn't give any security or anything. I made the acquaintance of Mr. Adams and borrowed the money from him." It appears, therefore, the question objected to was not answered, nor was it further pressed by the State. A felonious design is to be gathered from various acts and circumstances, and the defendant having voluntarily offered himself as a witness, might properly be questioned on cross-examination as to matters within his own breast, particularly when an opportunity is thus offered for explanation of suspicious circumstances.

The attorney for the State was permitted over the defendant's objection to address the jury as follows: "Don't you know if there had been any Thomas F. Davis, he (meaning defendant) would have had him here as a witness to show that he was at Orlando, and that defendant had gone there and asked him for money." The defendant had testified that he had gone to Plant City to find Davis to get money from him, but not finding him there had gone on to Lakeland, and thence to Orlando where he found Davis,

but did not get any money from him because he too was "broke."

In *Sylvester v. State,* 46 Fla. 166, 35 South. Rep. 142, we said: "This court will not scrutinize with nicety the logical force of arguments made by counsel assigned as ground for reversal," and in *Mitchell v. State,* 43 Fla. 584, 31 South. Rep. 242, "it is not reversible error for the court to refuse to interfere with the argument of counsel because it is illogical, or not based on deductions reasonably inferable from the facts." No fact, not in evidence, was assumed by the attorney and tested by the above rules, there is no ground for reversal.

The eighth and eleventh assignments are based on the refusal to give charges amounting practically to an affirmative direction to find the defendant not guilty. In the consideration of the evidence under another head we hold it sufficient to support the verdict, thus affirming the propriety of the court's refusal to charge as requested, and we need not, therefore, now determine whether the defendant in a criminal case is ever entitled as of right to a peremptory charge. See *McCray v. State,* 45 Fla. 80, 34 South. Rep. 5.

The ninth assignment is the refusal to charge that if the jury should find certain facts the defendant was guilty of larceny and for that reason should be acquitted of the charge of embezzlement. We do not think there was sufficient testimony in this record to authorize a charge on larceny within the rule laid down in *Finlayson v. State,* 46 Fla. 81, 35 South. Rep. 203, and there was no error in refusing the charge.

The tenth, twelfth and thirteenth assignments may be treated together. They are all based upon the refusal to give requested charges, which are all subject to the common vice, that they pick out and emphasize certain phases of the evidence as to the fraudulent conversion to the exclusion of the rest of the evidence in the case on that point; or, to use the language of this court in *Kennard v. State,* 42 Fla. 581, 28 South. Rep. 858, they "are predicated upon an

isolated fact, or only part of the evidence that is not con-
clusive of the merits of the case," and there was no error
in refusing them.    See, also, *Mims v. State,* 42 Fla. 199,
27 South. Rep. 865.

This charge was refused: "The court further charges
you as a matter of law that the evidence of the witness,
Adams, does not show any pledge or pawn of the horse."
It will be remembered that the witness Adams had testified
that the defendant came a stranger to him to borrow fifteen
dollars and stated: "I will leave the horse and buggy here
with you and will return to-night or to-morrow and pay you
the money."    Whereupon the money was loaned, Adams
retaining possession of the horse.    We think that under
these circumstances the question whether it was intended
that the horse should be security for the debt, or whatever
else may be lacking to complete a perfect contract of
pledge, might well have been left to the determination of
the jury, under proper instructions.    There was no over-
whelming evidence that no pledge was intended, and on the
contrary there was much in the situation of the parties and
in the language used to indicate such was their contract.
See *Mills v. Joiner,* 20 Fla. 479, text 493.

The fifteenth and eighteenth assignments are not
argued, and are, therefore, treated as abandoned.    And the
charge requested, the refusal of which is the basis of the
seventeenth assignment, contains a proposition of law that
we do not see could have any possible relevancy to the issues
in this case.

The motion for a new trial presents a serious question
as to the sufficiency of the evidence to show that the crime
was committed in Hillsborough county, and on this point
the authorities are not uniform.    We are of opinion, how-
ever, that the weight of authority is with the holding that
on the evidence in the case before us, there is sufficient to
support the jury's finding that the crime was committed in
Hillsborough county and that the acts of the defendant in
Polk county, immediately after leaving Hillsborough, are

but evidence of the felonious intent conceived in the latter county, and put into execution in part at least, by the outward act of conversion in driving the horse, contrary to the contract with its owner, beyond the town of Plant City and into another county. There were further *evidences* of this felonious *act* established by the proof that the defendant after leaving the horse at Lakeland went into Orange county, and on hearing there was a warrant out for him continued into Marion county, where he was subsequently arrested, and during this whole time made no attempt to return the horse to its owner, nor to communicate to him where the horse was; nor did the defendant communicate his whereabouts to the man with whom the horse was left. The whole duty of the defendant under the contract was to be performed in Hillsborough county; there the horse was used and there the horse was to be returned the next day, the conversion, therefore, took place in that county, and the subsequent acts evidenced the prior intent necessary to constitute the offense. 7 Ency. Pl. & Pr. 412; 2 Bish. New Cr. Law, secs. 372-3; *State v. Bailey,* 50 Ohio St. 636, text 644, 36 N. E. Rep. 233, and cases cited. See, also, *State v. Baumhager,* 28 Minn. 226, 9 N. W. Rep. 704. The evidence has been found sufficient by the jury and the judge who heard it, and will not be disturbed by us.

There remains to be considered but one point. It is claimed that the sentence was unauthorized. Section 2454, Revised Statutes of 1892, defines the crime of embezzlement and provides that one convicted thereof "shall be punished as if he had been convicted of larceny." At that time the punishment for larceny, when the property stolen was of the value of one hundred dollars or more, was "imprisonment in the State prison not exceeding five years, or in the county jail not exceeding twelve months, or by a fine not exceeding one thousand dollars," and petit larceny, property of less value than one hundred dollars, was a misdemeanor only. By chapter 4395, acts of 1895, the dividing line between grand and petit larceny was reduced to twenty dollars, and

the punishment remained the same.   There was, however, in 1892, and is now with some changes, a special statute against horse and cattle stealing which made no distinction of values and the penalty for this special offense was then fixed at not exceeding two years in the State prison or fine of five hundred dollars, sec. 2449, R. S. of 1892. The legislature in 1897, chapter 4533, increased this imprisonment so as to make two years the minimum and five years the maximum penalty.   In the instant case the defendant was sentenced for a term of three years in the State prison.   It is contended that section 2454 does not disclose an intention to adopt any future punishment thereafter to be prescribed for larceny, and that no such intention if expressed could be made effective under our constitution; and further that section 2454 must have had reference to the specific kind of larceny prescribed by section 2449, where the property embezzled was a horse.   As we do not concur in the last contention of the plaintiff in error, we are not called upon to pass upon the constitutional question sought to be raised.   If the "larceny" referred to in the embezzlement act means the general law on the subject of larceny, the punishment here inflicted is within the law as it then existed and as it now is, and that such is the proper construction we have no doubt. In *Strong v. Lake Weir Chatauqua & Lyceum Ass'n,* 25 Fla. 765, 6 South. Rep. 882, we held that under the mechanics lien law providing that the liens "shall be enforced by attachment in manner provided by law," the reference is to the general attachment law of the State, and not to attachments authorized in special cases. In that opinion this court said: "If the proceeding in any special case had been in contemplation the act would have so declared."   Specific laws have reference to specific conditions and when those conditions change, the legislature readily repeals or modifies such laws, while general laws are permanent in their nature and not subject to frequent change, and in the absence of language to the contrary, it is to be presumed that the legislature has in mind the gen-

eral law and not some special act due to transitory conditions. The property embezzled was alleged and proven to be of the value of one hundred dollars, and the sentence was within the law.

This disposes of all the assignments of error, and the judgment is affirmed.

HOCKER, CARTER and SHACKLEFORD, JJ., concur.

WHITFIELD, J., disqualified, took no part in the consideration of this case.

TAYLOR, C. J., absent on account of sickness.