C. A. SKIPPER v. DOYLE SCHUMACHER, as Sheriff of High-lands County.

169 So. 58.
Division A.
Opinion Filed May 28, 1936.
Rehearing Denied June 26, 1936.

*W. D. Bell,* for Petitioner;

*Cary D. Landis,* Attorney General, *Roy Campbell,* Assistant Attorney General, and *J. C. Adkins,* State Attorney, for Respondent.

BROWN, J.—Upon the petition of C. A. Skipper alleging that for various reasons he was unlawfully restrained of his liberty by the respondent sheriff of Highlands County, this court issued a writ of habeas corpus directed to the respondent commanding him to have the petitioner before this court together with the cause of detention. The respondent's return to the writ shows that he was and is holding the petitioner in custody upon the authority of two commitments issued out of the Circuit Court for High-

lands County, one issued November 6, 1935, and the other November 20, 1935, which commitments were issued pursuant to a judgment of conviction and sentence of the petitioner to the State penitentiary for embezzlement and conversion of bank funds, certified copy of said commitments and judgment of conviction being attached to and made a part of respondent's return.

The judgment of conviction referred to was affirmed by this court in the case of Skipper v. State, 114 Fla. 312, 153 So. 853. (Appeal to U. S. Supreme Court dismissed "for want of a properly presented Federal question," 55 S. C. R. 76, 79 L. Ed. 631.) Thereafter, Skipper petitioned the Circuit Court of Highlands County for a writ of habeas corpus, which was denied. On writ of error, allowed by this court, the judgment of the Circuit Court denying the writ of habeas corpus was reviewed and upon consideration was affirmed. Skipper v. Schumacher, 118 Fla. 867, 160 So. 357. Rehearing was applied for and denied. Thereafter petition for writ of certiorari was filed in the U. S. Supreme Court for review of the judgment of this court, and according to the briefs in this case, said petition was denied, Oct. 14, 1935, 56 Sup. Ct. 88, 80 L. Ed. 103. Thereafter, the petitioner herein filed a petition in this court for permission to apply to the Circuit Court of Highlands County for a writ of error *coram nobis,* which petition was denied without opinion; whereupon this petition for writ of habeas corpus was filed, with copy of said petition for leave to apply to the trial court for writ of error *coram nobis* thereto attached and made a part thereof. The case is now before us upon the petition for writ of habeas corpus, the writ and the return thereto.

Most of the legal questions raised by the present petition for habeas corpus have been heretofore ruled upon and de-

cided by this court, adversely to the contentions of the petitioner, in the opinions and decisions above referred to, reported in 114 Fla. 312, 153 So. 835, and 118 Fla. 867, 164 So. 357.

It is now among other things contended that Section 7247, Comp. Gen. Laws of 1927, which this court held applicable to the first three counts of the indictment, is an invalid statute, because it does not disclose whether the offense denounced therein is a misdemeanor or a felony; that the guilt of one charged under said statute is not made to depend upon the extent of the value of the thing converted or embezzled, as the offense is complete upon the conviction for embezzlement of anything of value, whether such value be great or small; that the statute does not divide the offense into grades or degrees, such as grand or petit embezzlements, but merely provides that one who violates its provisions shall be punished as if he had been convicted of larceny, and does not point out the particular kind of larceny referred to, nor the statute containing such penalty, so that it may be ascertained.

Section 25 of Article XVI of our Constitution provides that; "The term felony, whenever it may occur in this Constitution or in the laws of the State, shall be construed to mean any criminal offense punishable with death or imprisonment in the State penitentiary." And Section 7105 C. G. L., reads: "Any crime punishable by death, or imprisonment in the State prison, is a felony, and no other crime shall be so considered. Every other offense is a misdemeanor."

Grand larceny is defined by Section 7223 C. G. L., being Section 5122 of Revised General Statutes of 1920, and petit larceny is defined by Section 7224 C. G. L., being Section 5123, Revised General Statutes, the distinction between the

two being based upon the value of the property stolen. If the property stolen is of the value of $50.00 or more, the offender is deemed guilty of grand larceny; if the value is less than $50.00 the offender is deemed guilty of petit larceny. The punishment for grand larceny is by imprisonment in the State penitentiary not exceeding five years, or in the county jail not exceeding twelve months, or by fine not exceeding $1000.00 The punishment for petit larceny is .by imprisonment in the county jail not exceeding six months or by fine not exceeding $300.00. These two sections of the statutes are both derived from Chapter 1637 of the Acts of 1868. Following these sections there are a number of special forms of larceny, such as stealing in a burning building, stealing bank note paper, stealing logs or timber, the stealing of horses and cattle, etc.

Section 7247, C. G. L., the embezzlement statute here involved, provides that any person offending against its provisions "shall be punished as if he had been convicted of larceny."

The contentions of the petitioner have been effectually disposed of by the decision of this Court in the case of Wilson v. State, 47 Fla. 118, 36 So. 580, wherein it was held that: "Where the statute defines the crime of embezzlement and provides that one convicted thereof shall be punished as if he had been convicted of larceny, it has reference to the general law on the subject of larceny and not to special cases.

In the opinion of Mr. Justice COCKRELL, speaking for the court in that case, it was said:

"If the 'larceny' referred to in the embezzlement Act means the general law on the subject of larceny, the punishment here inflicted is within the law as it then existed and as it now is, and that such is the proper construction

we have no doubt. In Strong v. Lake Weir Chautauqua & Lyceum Ass'n, 25 Fla. 765, 6 South. Rep. 882, we held that under the mechanics lien law providing that the liens 'shall be enforced by attachment in manner provided by law, * * * the reference is to the general attachment law of the State, and not to attachments authorized in special cases. In that opinion this court said: 'If the proceeding in any special case had been in contemplation the Act would have so declared.' Specific laws have reference to specific conditions and when those conditions change, the Legislature readily repeals or modifies such laws, while general laws are permanent in their nature and not subject to frequent change, and in the absence of language to the contrary, it is to be presumed that the Legislature has in mind the general law and not some special Act due to transitory conditions. The property embezzled was alleged and proven to be of the value of one hundred dollars, and the sentence was within the law."

See also Crawford v. State, 93 Fla. 1082, 113 So. 90.

The petition for the writ of habeas corpus further alleges in general language that the State of Florida contrived the conviction of the petitioner through pretense of a trial which in truth and in fact was only used as a means of depriving him of his liberty through a deliberate deception of the court and the jury by the presentation of testimony at his trial known to be untrue, and that without the testimony so presented there would have been no basis whatever for his conviction, and that such contrivance by the agents of the State of Florida who procured his conviction and imprisonment is inconsistent with the rudimentary demands of justice, and that the judgment of conviction against him was obtained by fraud upon the court and is null and void, and that his imprisonment thereunder is a denial to

him of due process of law and equal protection of the laws in contravention of Section 1 of the 14th amendment to the Constitution of the United States.

Probably realizing that these general allegations were not sufficient under the rules of pleading, the petitioner then alleges that his petition for writ of error *coram nobis,* a true copy of which is attached to the present petition, sets up the illegality of said judgment and the manner in which it was obtained, and that all the matters and things set forth and alleged in said petition for *coram nobis* in the Supreme Court of Florida are true and all of said allegations are made a part of this petition as if set forth therein *in haec verba.*

Turning to the petition thus attached as an exhibit, it is there alleged that since the determination of this case in the Supreme Court of Florida the plaintiff in error had learned that a certain State's witness, one C. E. Lien, had been induced to testify falsely that plaintiff in error embezzled the money alleged in the indictment when as a matter of fact plaintiff in error did not embezzle said money. Paragraphs four and five and six of the said petition attached as an exhibit, read as follows:

IV.

"That the indictment in said cause was based upon the purported embezzlement of the proceeds of one $15,000.00 note, said note being one of a series of three notes of $15,000.00 each and referred to by the witnesses as Russ Lumber Company notes. That the said C. E. Lien, through agencies of the State of Florida hereinafter referred to, was induced to testify at the trial of said cause that all three of said notes were held by the bank as collateral when in fact and in truth only one of said notes was so pledged and that note was pledged as collateral to a note held by

the bank given by Corporate Investments, Incorporated, for $5,000, on June 20, 1931, and the other two $15,000.00 notes were held for safe keeping only. That through the agencies of the State of Florida hereinafter referred to, the said C. E. Lien was induced to testify that the Russ Lumber Company note that was held as collateral by the bank had never been released, when as a matter of truth and fact the Corporate Investments, Incorporated, obtained a renewal of the $5,000.00 note to which the Russ Lumber Company note of $15,000.00 was held as collateral and substituted therefor seven notes of $12,000.00 each dated June 4, 1925, signed by J. P. Sugrue and secured by a first mortgage approximately 1900 acres of land in Highlands County, Florida. The said C. E. Lien, through the agencies of the State of Florida hereinafter referred to, was induced to withhold from plaintiff in error and from the Court and Jury in said cause the fact that the application of the Corporate Investments, Incorporated, for a substitution of its collateral as aforesaid was submitted to the Loan Committee consisting of Gregg Maxcy, C. W. Harshman, and C. E. Lien, and that the said committee approved the substitution of said collateral and that the same was later approved by the Directors and such approval recorded in the minutes of the Directors meeting and that thereupon the Russ Lumber Company note or the Nocatee Crate Company notes were released from that date and not considered as bank collateral to any notes; and not recorded as collateral on any statements made to the Comptroller and were not property of the bank nor were the proceeds thereof property of the bank at the date of the alleged embezzlement; and that the plaintiff in error did not embezzle the said note or notes or any proceeds thereof, all of which is shown in the letter of C. E. Lien directed to W. D. Bell

under date of September 30, 1935, which is attached hereto and designated Exhibit "C."

## V.

"Plaintiff in error alleges and charges the fact to be that the said C. E. Lien was, during the period when said cause was being investigated by the Grand Jury, laboring under great excitement and distress of mind, due to the conditions of the bank and fear lest he himself should be involved in connection therewith. That during this period, he was visited at his home by the several Grand Jurymen and was told in effect that if he did not testify in such a manner as to obtain the indictment and conviction of plaintiff in error, and unless he refrained from giving any information to plaintiff in error or his attorney, he would be indicted and prosecuted, but that if he testified in accordance with their wishes and refrained from having anything to do with plaintiff in error or his attorney, all would be well; this information was confirmed by one member of the Grand Jury during their deliberations. On one occasion after midnight he was again visited and told that a meeting had been called in one of the business buildings of the city to discuss Grand Jury deliberations and instruct the Grand Jury what to do and that he would be expected to testify in such a manner as to indict and convict plaintiff in error, otherwise he would be prosecuted himself; and under these conditions and by reason of said threats conveyed to him by members of the Grand Jury, he was induced to misstate said facts and to withhold from plaintiff in error and his attorney the information contained in the books of said bank that would have proved that all transactions of the said Skipper with said bank were approved by the Board of Directors.

## VI.

"Plaintiff in error says although there were other witnesses sworn by the State in said cause, there was no witness who testified to any fact upon which a verdict of guilt could be based save the said witness, C. E. Lien; that the sole basis of the conviction of plaintiff in error was the testimony which was knowingly used by the said agencies of the State of Florida, in order to obtain the indictment against him and his subsequent conviction, and these authorities also deliberately suppressed evidence which would have impeached and refuted the testimony given against him; and that he could not by reasonable diligence, have discovered prior to his trial and the denial of his motion for a new trial and prior to suing out a writ of error and prior to the affirmance of the judgment by the Supreme Court of Florida, the evidence which was subsequently developed and proved that the testimony against him was obtained by intimidation and fraud. Plaintiff in error urges that the knowing use by the agencies of the State of Florida of said testimony to obtain his indictment and conviction and the deliberate suppression of evidence that would have impeached said testimony, constituted a denial to him of due process of law in contravention of Section 1 of the Fourteenth Amendment to the Constitution of the United States."

Counsel for petitioner contends that these allegations entitle petitioner to the writ of habeas corpus upon the authority of the case of Mooney v. Holohan, 294 U. S. 103, 79 L. Ed. 791, 55 S. C. R. 340, 98 A. L. R. 406. The opinion of the Supreme Court of the United States in that case referring to the requirements of the due process clause of the 14th Amendment had this to say:

"That requirement, in safeguarding the liberty of the

citizen against deprivation through the action of the State, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions. Hebert v. Louisiana, 272 U. S. 312, 316, 317, 71 L. Ed. 270, 273, 47 S. Ct. 103, 48 A. L. R. 1102. It is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a State has contrived a conviction through the pretence of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation. And the action of prosecuting officers on behalf of the State, like that of administrative officers in the execution of its laws, may constitute state action within the purview of the Fourteenth Amendment. That Amendment governs any action of a State 'whether through its legislature, through its courts, or through its executive or administrative officers.' Carter v. Texas, 177 U. S. 442, 447, 44 L. Ed. 839, 841, 20 S. Ct. 687; Rogers v. Alabama, 192 U. S. 226, 231, 48 L. Ed. 417, 419, 24 S. Ct. 257; Chicago B. & Q. R. Co. v. Chicago, 166 U. S. 226, 233, 234, 41 L. Ed. 979, 983, 984, 17 S. Ct. 581."

Further on in the opinion it is stated, in effect, that where a person has been deprived of his liberty without due process of law, the remedy by the prerogative writ of habeas corpus is available, and that no decision of the Supreme Court of California had been brought to the attention of the court holding that the State Court is without power to issue this historic remedial process under such circumstances.

In that case the petitioner charged that the sole basis of

his conviction was perjured testimony which was knowingly used by the prosecuting attorney in order to obtain his conviction, and that such attorney had deliberately suppressed evidence which would have impeached and refuted the testimony thus given against him. The State Attorney General argued that the petitioner's contention was vitiated by the fallacy that the acts or omissions of a prosecuting attorney can ever, in and of themselves, amount either to due process of law or to a denial of due process of law; that it is only where such an act or omission operates so as to deprive a defendant of notice, or so as to deprive him of an opportunity to present such evidence as he has, that it can be said that due process of law has been denied. The court said that it was unable to approve such a narrow view of the requirement of due process. Then follows the quotation above given.

Admitting that the case of Mooney v. Holohon holds that the action of prosecuting officers on behalf of a State may constitute State action within the purview of the due process clause of the 14th Amendment, and that such requirement is not satisfied where a conviction is obtained by the presentation of testimony known by the prosecuting attorney to be perjured, it must be observed that in this case there is no charge of wrong doing on the part of the State's prosecuting officer. It is not charged that the State Attorney in this case knowingly introduced any perjured testimony or that he knowingly suppressed testimony which would have impeached or refuted that which was introduced. The charge is that while the Grand Jury was in session and had this case under investigation the witness, Lien, was visited at his home by several unnamed members of the Grand Jury and told in effect that if he did not testify in such a manner as to obtain the indictment and con--

viction of petitioner, and unless he refrained from giving any information to petitioner or his attorney, he himself would be indicted and prosecuted, and that by reason of these threats conveyed to him by members of the Grand Jury he was induced to misstate material facts and to withhold from petitioner and his attorney information contained in the books of the bank that would have proved that all transactions of the petitioner with said bank had been approved by the Board of Directors.

The question thus presented is whether this alleged wrongful action on the part of several unnamed members of the Grand Jury constitutes State Action. It is not charged that a majority of the Grand Jury participated in this highly reprehensible conduct. The Grand Jury is an inquisitorial and accusatorial body organized and acting under and by virtue of the State laws. It can bring a charge by way of indictment, but it cannot convict or punish. It must consist of not less than fifteen nor more than eighteen persons, and the assent of at least twelve of them is necessary to the finding of an indictment. The word "several" is used by petitioner here. It is not alleged that as many as twelve members of the Grand Jury or even a bare majority, participated in this alleged wrong doing. The impression created by the language used is that perhaps some two or three members of the Grand Jury are so charged. This is not enough to show any action by the State, or by the Grand Jury itself as an agency of the State. Indeed, no member of the Grand Jury can take any effective or lawful action as a Grand Juror, and in that capacity, except when the Grand Jury is in session. It is the Grand Jury as a body, and not its individual members acting on their own volition outside the Grand Jury room, which constitutes an agency of the State to investigate

charges of crime, and where twelve members agree to it, to make such charges the basis for prosecution by finding formal indictments. If wrongful conduct of the sort here charged on the part of two or three members of the Grand Jury would afford sufficient basis to invalidate indictments and convictions obtained thereon, months and years after the judgments of conviction had been rendered, on the theory that such two or three unnamed members of the Grand Jury were acting as a *State agency,* it would indeed set a dangerous precedent. If an intelligent witness, like the witness, Lien, the President of a bank, assuming that he was in his right mind, could be frightened into giving perjured testimony against an innocent man by the threats of prosecution made by two or three members of a grand jury, is it not conceivable that he, or some other person or persons under similar circumstances, might also be frightened, or induced by other influences, into falsely making such a charge against members of the Grand Jury in order to secure the nullification of a perfectly just judgment of conviction, when in fact there was no basis in truth for any such charge?

Now undoubtedly the State's Prosecuting Attorney is an agent of the State, and if he knowingly secures a conviction by the conscious and deliberate use of perjured testimony, this is sufficient ground, under the case above cited, for holding such judgment of conviction null and void. No grosser fraud could be perpetrated upon a court. The agencies of the State for the enforcement of law and the administration of justice must never be allowed to be prostituted to the defiance of law and the effectuation of injustice. Those who minister in the temples of justice must keep their hands clean. But neither in the petition, nor in the briefs, nor in the oral argument, has it been alleged

or charged that the able and reputable State Attorney, who represented the State upon the trial of this case, was guilty of any wrong doing whatsoever.

Here, however, the charge of fraudulent State action is based upon alleged intimidation of the State's chief witness, upon whose testimony the petitioner was convicted, by several unnamed members of the Grand Jury, acting outside the Grand Jury room, who, whatever their influence with other members of the Grand Jury might have been, had no power to bind the Grand Jury, were certainly not acting within the scope of their lawful duties or authority, and their action, however outrageous *per se,* can hardly be said to have been the action of the State, or of an agency of the State, within the meaning of that provision of the federal Constitution referred to in the Mooney v. Holohan case, which says that no *State* shall deprive any person of life, liberty or property without due process of law.

Thus, it has been held that an indictment will not be vitiated because of the misconduct of one or more members of the Grand Jury in becoming intoxicated while the indictment was under consideration by that body. Allen v. State, 61 Miss. 627; 28 C. J. 816.

Our laws provide that only the names of law-abiding citizens of approved integrity and good character shall be placed in the jury box. The presumption is that this duty was complied with; hence the rule that objections to indictments based upon disqualification of grand jurors should be seasonably raised by plea in abatement. Furthermore, if this alleged gross misconduct on the part of members of the Grand Jury, in plain violation of the oath which the court was required by law to administer to them, had been brought to the attention of the court by the witness thus threatened,

prompt punishment as for contempt of court would doubtless have been vigorously imposed.

Indeed, the copy of the letter from the former witness, Lien, addressed to counsel for the petitioner, attached as an exhibit to the petition, indicates that he attributed his "errors" and misstatements of material facts in the giving of his testimony more largely to his intense physical suffering and mental distress at the time, and the fear aroused by the inflamed state of public sentiment in the community following the closing of the bank, and its failure to re-open, than to the alleged wrongful conduct of members of the Grand Jury. It is quite possible, however, that a man, although of ordinary courage, who was in the mental and physical state, and surrounded by the ominous conditions, pictured in Lien's letter, might be powerfully influenced by threats from Grand Jurors which under ordinary circumstances he would meet in a very different way.

While the State of Florida cannot be said to have become involved in any denial of due process of law, because of the misconduct of a few members of the Grand Jury, as alleged in the petition before us, so as to bring this case squarely within the principles announced in Mooney v. Holohan, *supra,* we have our own "due process" clause which is not confined to prohibiting the denial of due process by State action; as is the like clause in the national Constitution. Section 12 of our Declaration of Rights provides that "No person shall be * * * deprived of life, liberty or property without due process of law." And Section 4 of the same Declaration says that: "All courts of this state shall be open, so that every person for any injury done him in his lands, goods, person or reputation, shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay." These ringing and

far reaching pronouncements of our fundamental law must, and shall be upheld, and given full force and effect by the Courts, insofar as the courts can do so without invading the legislative domain. Such has been, and will continue to be, the purpose and practice of this Court.

Assuming the facts alleged in the petition to be true, as we must in passing upon its sufficiency, what is the "due course of law" by which this petitioner "shall have remedy" for the injury done him in his person and reputation" by the conviction for felony and sentence to the penitentiary thus alleged to have been fraudulently procured in large part by the perverted action of some of the members of the Grand Jury, which body formed a constituent branch of the very court in which the conviction was procured? If the facts alleged are true, and can be proven, which of course remains to be seen, there ought to be some remedy.

In the case of Mooney v. Holohan, *supra,* the Supreme Court of the United States strongly intimated that the writ of habeas corpus could be used as a remedy in such a case as that which was then under consideration. If so, might it be considered available here? As was said by that Court: "No decision of the Supreme Court of California has been brought to our attention holding that the State Court is without power to issue this historic remedial process when it appears that one is deprived of liberty without due process of law in violation of the Constitution of the United States * * *. In view of the dominant requirement of the 14th Amendment, we are not at liberty to assume that the State has denied to its Court jurisdiction to redress the prohibited wrong upon a proper showing and in an appropriate proceeding for that purpose."

With us in this jurisdiction, the impeachment of judgments of courts of general jurisdiction by means of the

writ of habeas corpus has not been recognized as one of the appropriate uses and functions of that ancient writ. This court has acted upon the theory that where the attack is collateral, the judgment of a court of general jurisdiction cannot be impeached for error or irregularity, not extending so far as to affect the question of the power or jurisdiction of the court to act in the case. This general rule is well settled by numerous decisions of both the State and Federal Courts of this country. Of course, the court rendering the judgment must have had jurisdiction of the person, and of the subject matter, and jurisdiction to render the particular judgment assailed. Church on Habeas Corpus, Section 362. It is equally well settled that if the judgment under which one is restrained of his liberty is *void*, it may be assailed collaterally, and habeas corpus is a proper remedy. Anderson v. Chapman, 109 Fla. 54, 146 So. 675; 12 R. C. L. 1196; *Ex Parte* J. C. H., 17 Fla. 262; State v. Lehman, 100 Fla. 481, 129 So. 818; White v. Penton, 92 Fla. 837, 110 So. 533; Bronk v. State, 43 Fla. 461, 31 So. 248. Of course, the rule is familiar that where the statute under which the charge is made is invalid, or the charge as made wholly fails to state any offense under the laws of the State, habeas corpus may be invoked; but it is equally well settled that habeas corpus is not a substitute for writ of error, appeal or certiorari, and does not lie for mere irregularities of procedure where the court has jurisdiction. The object of the writ is not primarily to determine whether a person has or has not committed a crime, or the justice or injustice of his detention on the merits, but to determine whether he is legally imprisoned or restrained of his liberty. In a note to the case of Kavanagh v. Hamilton, 53 Colo. 157, 125 Pac. 512, 32 Ann. Cas. 76, 82, it is said:

"A collateral attack on a judgment or decree has been de-

fined as any proceeding which is not instituted for the express purpose of annulling, correcting or modifying it. Morrill v. Morrill, 20 Ore. 96, 25 Pac. 362, 23 Am. St. Rep. 104, L. R. A. 155. Assuming this definition to be correct it is obvious·that a proceeding to annul, modify, or correct a judgment, in other words, a proceeding that is pointed directly at a judgment, is a direct and not a collateral attack on the judgment. Thus a motion to vacate and set aside a judgment is obviously a direct attack. Du Bois v. Clark, 12 Colo. App. 220, 55 Pac. 750; Powell v. Gott, 13 Mo. 458, 53 Am. Dec. 153; as is a proceeding by writ of *audita querela* to set aside a judgment, Folsom v. Conner, 49 Vt. 4; or a proceeding to enjoin the enforcement of a judgment, Smith v. Morrill, 12 Colo. App. 233, 55 Pac. 824. So a judgment may be directly attacked by answer or cross complaint in an action on the judgment. Wilson v. Hawthorne, 14 Colo. 530, 24 Pac. 548, 20 Am. St. Rep. 290. A proceeding by certiorari in the district court to revise and correct an order of the probate court is a direct proceeding. Linch v. Broad, 70 Texas 92, 6 S. W. 751. But an attack by habeas corpus on the validity of the judgment under which the petitioner is imprisoned, is of a collateral character, and unless the judgment is void on the face of the record, no relief can be obtained in such inquiry. Turney v. Barr, 75 Ia. 768, 38 N. W. 550. See also *Ex Parte,* Ah Men, 77 Cal. 198, 19 Pac. 380, 11 Am. St. Rep. 263." See also 15 R. C. L. 835-839.

However, it is well settled in this jurisdiction that a judgment or decree, rendered in civil actions at law or in cases in equity, may be impeached and set aside, on bill in equity filed for that purpose, when it is alleged and proven by evidence *de hors* the record that such judgment or decree was procured by fraud; and in some cases judgments and de-

crees may be set aside on motions for the same reason. Sawyer v. Gustason, 96 Fla. 6, 118 So. 57; Gamble v. Gamble Holding Corp., 120 Fla. 340, 182 So. 886, and numerous cases therein cited.

In 15 R. C. L. 855, it is said:

"It is the general rule that a judgment cannot be impeached for fraud by a party or privy to it, unless the fraud affects the jurisdiction of the court or appears on the face of the judgment roll itself. The exception as to fraud affecting the jurisdiction of the court is more apparent than real, since an attack on a judgment on the ground of fraud in its procurement constitutes a direct attack."

It might be said that the purpose of this habeas corpus proceeding is to attack the judgment of conviction of petitioner on the ground of fraud in its procurement, and in that sense it constitutes a direct attack, not based on any issue which was tried out in the trial which resulted in the conviction of the petitioner. But can the writ of habeas corpus be used for that purpose? Our previous decisions would indicate that it cannot. The substantial charge in this petition for habeas corpus is that the judgment is illegal and void because it was procured by fraud and intimidation on the part of several members of the Grand Jury, a body which forms a constituent arm of the court, by which intimidation the witness upon whose testimony the conviction was obtained was influenced to testify falsely; and that these facts were not brought out at the trial and did not come to the knowledge of petitioner until long after the trial. If habeas corpus could be used as a remedy to set aside a judgment of a court of general jurisdiction, valid on its face, under which the petitioner is held in custody, on the ground that such judgment was procured by gross fraud, unknown to the court or to the petitioner or his

counsel at the time, then this would appear to be a case which would merit the use of that remedy; assuming of course, as we must, in passing on the sufficiency of the petition, that the facts alleged therein are true and can be proven.

If habeas corpus is not an appropriate remedy, the question arises whether the writ of error *coram nobis* could be resorted to.

This Court has already held, quite recently, without opinion, that writ of error *coram nobis* did not lie in this case upon a petition making substantially these same allegations. The general function of a writ of error *coram nobis* is defined in the able opinion of the present Chief Justice in the case of Lamb v. State, 91 Fla. 396, 403, 107 So. 535, in the following language:

"The function of a writ of error *coram nobis* is to bring the attention of the court to a specific fact or facts then existing but not shown by the record and not known by the court or by the party or counsel at the trial, and being of such a vital nature that if known to the court in time would have prevented the rendition and entry of the judgment assailed. But in order to warrant the granting of a writ of error *coram nobis* in a criminal case it must be duly shown by affidavits or other legal evidence that then existing particular facts pertinent to the case, if known to the court, would have prevented the judgment that was rendered; that such facts though existing at the time were unknown to the court and to the defendant and to his counsel when the judgment was rendered; that by the exercise of due diligence neither the defendant nor the counsel in the case could have known of or ascertained the stated facts before the judgment was rendered or before the motion for a new trial was made; and that the defendant and

the counsel exercised all ordinary and reasonable care and diligence to discover and ascertain all facts pertinent to the issue tried; or it must be duly made to appear that such facts or other facts that would have afforded an effective defense, though existing or having occurred prior to the judgment, were not discovered or ascertained. or were not made known to 'the court, because of actual, dominating fraud, duress or other unlawful means actually exerted by some one not in privity with the petitioner or counsel, to prevent such discovery or ascertainment or disclosure to the court in due season to be available as an efficient defense or to prevent the rendering of the final judgment rendered."

This statement of the law is supported by the learned Chief Justice with copious citations of decided cases, and as stated in that portion of the opinion above quoted, it would seem therefrom that the attack here sought to be made upon the judgment of conviction, if the allegations had been more specific, could appropriately have been made by a writ of error *coram nobis* in the trial court, after leave granted by this court to make such application to the trial court. But it should be noted in this connection that later on in the same opinion in the Lamb case, it was said:

"The remedy cannot be. invoked on the ground that an important witness testified falsely about a material issue in the case; nor can newly discovered evidence, going to the merits of the issue tried, be used as a basis for the writ. Asbell v. State, 62 Kan. 209, 61 Pac. Rep. 690; Howard v. State, 58 Ark. 229, 24 S. W. Rep. 8; State, *ex rel.* Davis, v. Superior Court of Pierce County, 15 Wash. 339, 46 Pac. Rep. 399."

However, it is contended in this case that this petition shows not merely that C. E. Lien was an important witness

and testified falsely about a material issue, but that it was upon his testimony that the verdict of conviction was based and that without it there would have been no verdict of conviction and hence no judgment; and that the gravamen of the petition is that the giving of this false testimony was procured by the fraudulent and threatening conduct of persons—members of the Grand Jury—who were connected with the court's organization. This distinguishes the case made by the petition now before us from the statement last quoted from the Lamb case, and leads to the conclusion that the allegations of the petition, if the facts had been fully disclosed, might have brought this case within the first quotation made from the Lamb case.

If, therefore, as it appears from the very general allegations in the petition, the petitioner may be entitled to some remedy, by virtue of Section 4 of the Declaration of Rights, contained in our Florida Constitution, it would seem that writ of error *coram nobis* would be a more appropriate remedy than writ of habeas corpus to try out the real issues attempted to be raised, and better adapted to the adjudication of such issues. See the able opinion of Mr. Presiding Justice ELLIS in the case of Chambers, *et al.,* v. State, 117 Fla. 642, 158 So. 153.

But if we should treat the present petition as a renewal of the application to this court for leave to apply to the trial court for writ of error *coram nobis,* we would have to hold it insufficient.

In the case of Washington v. State, 92 Fla. 740, 110 So. 259, this court said:

"We are convinced that the better practice is that where, after an affirmance by this court of the lower court's judgment, application is made to this court for permission to make an attack on such judgment by means of a petition

to the lower court for a writ of error *coram nobis,* such application to this court should make a full disclosure of the specific facts relied on, and not merely the conclusions of the petitioner as to the nature and effect of such facts, so that this Court can construe the facts for itself and ascertain whether, under settled principles pertaining to such writ, the facts alleged would afford, at least *prima facie,* just ground for an application to the lower court for a writ of error *coram nobis.*

See also, to like effect, Chambers v. State, *supra,* wherein it is said that "the mere granting of the writ does not of itself impair the security of the State's judgment of conviction. That security is impaired only after the trial court, upon a proper and sufficient showing of essential facts duly made by legal and adequate evidence, annuls the judgment of conviction."

The present petition does not make "a full disclosure of the specific facts relied on," but on the other hand the allegations are in the nature of conclusions of the pleader as to the general nature and effect of such facts; nor are the number or names of the alleged wrongdoers set forth. So the petition, even though treated as a petition for leave to apply to the trial court for writ of error *coram nobis,* does not come up to the requirements of our previous decisions.

On the oral argument, counsel for petitioner requested leave to amend this petition for writ of habeas corpus if the court should conclude that its allegations of fact were not sufficiently specific. But whether counsel for petitioner desires this court to treat the petition as one for leave to apply for writ of error *coram nobis,* and if so treated, to allow amendment in any respect, has not yet been made to appear. So no action by the court in that regard is now called for.

The return of the respondent Sheriff, showing that he holds the petitioner in custody by virtue of two commitments issued in due form upon the authority of a judgment of a court of general jurisdiction, valid on its face (which judgment has never been reversed, impeached or set aside, but on the other hand, after review of the record thereof on writ of error, was by this court affirmed), is held to be a good and sufficient return to the writ of habeas corpus heretofore issued herein. So the writ is quashed, and the petitioner is accordingly remanded to the custody of the respondent.

It is so ordered.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.