**EVANS v. RIVES.**

No. 8134.

United States Court of Appeals for the
District of Columbia.

Decided Feb. 21, 1942.

Mr. Isadore H. Halpern, of Washington,
D. C., for appellant.

Mr. Fred J. Icenhower, Assistant Corporation Counsel, with whom Mr. Richmond B. Keech, Corporation Counsel, and Mr. Vernon E. West, Assistant Corporation Counsel, were on the brief, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice:

This is an appeal from an order of the District Court of the United States for the District of Columbia discharging a writ of habeas corpus and dismissing the petition on which the writ was issued and remanding the petitioner to the custody of the Superintendent of the Washington Asylum and Jail. The petitioner is serving a sentence of one year under a conviction in the Juvenile Court of the crime of refusing to provide for the support and maintenance of a minor child, James Evans, in destitute or necessitous circumstances. The conviction and sentence were under D.C. Code (1929) tit. 6, § 271.[1]

Upon issues joined under the petition for the writ and an answer filed by the District of Columbia, there was a hearing in the District Court. The record of that hearing discloses the following concerning the proceedings in the Juvenile Court: On June 27, 1941, an information was filed, upon the oath of Hortense J. Tinsley for the Board of Public Welfare, charging the petitioner with the offense above referred to. On the night of July 1, 1941, a summons was served upon the petitioner at his home in the District, requiring him to appear at 9:45 a. m. on July 2 "as a defendant in an action in which it is charged that you have failed to support a minor child since on or about July 6, 1940

. . . ." The petitioner appeared as thus required and, according to his testimony in the instant proceeding, the case was disposed of in the Juvenile Court as follows:

". . . he appeared and a paper was read to him and he was asked if he plead guilty of failing to support James Evans. He said that he was guilty of not paying for support. The clerk said then do you plead 'Guilty.' The judge then ordered him to pay $5.00 a week. James Evans was not there. He was not given a chance to explain himself. He was not told that he could have a lawyer nor that he was waiving his right to counsel, nor that he did not have to plead guilty, nor that he could have a jury trial. He did not know that he could have an attorney or that he could demand a jury trial.

"He only understood part of what was read to him. The part he understood was that he was not supporting James Evans. He does not remember the parts he did not understand. . . .

"He is now 39 years of age, colored, went only to the 4th grade of grammar school. . . . He works as a tile setter's helper and earns $4.50 a day, six days a week when the weather is good and there is work.

"He now lives at 1631 Rosedale St., N. E., a 5 room house, with running water, gas and electric, paying $30.00 a month rent. That he got this house to get the Board of Public Welfare to let him have James Evans. They said that his other homes were not large enough; too many children in the family.

"James Evans has not been with him since 1938; that the Board of Public Welfare has James Evans with a private family at LaPlata, Md.

---

[1] This statute makes it a misdemeanor for any person in the District of Columbia without just cause to refuse to provide for the support and maintenance of his child under the age of sixteen in destitute or necessitous circumstances. It provides for a fine of not more than $500 or imprisonment in the Work House of the District for not more than twelve months, or both such fine and imprisonment. It further provides that the court, after conviction, instead of imposing the punishment just described, or in addition thereto, in its discretion, having regard to the circumstances and financial ability or earning capacity of the defendant, shall have power to make an order directing him to pay a certain sum weekly for the space of one year to the guardian of the minor child, and to release the defendant from custody on probation for the space of one year upon his entering a recognizance in such sum as the court may direct, conditioned for compliance with the terms of the order. The statute also provides that if the court be satisfied by information and due proof that at any time during the year the defendant has violated the terms of the order, it may forthwith sentence him under the original conviction. The Juvenile Court is given concurrent jurisdiction with the District Court of the United States for the District of Columbia in all cases arising under this section.

"[Upon cross-examination] . . . he knew what a plea of guilty was; . . . he knew that he was not supporting James Evans. . . . he entered a plea of guilty voluntarily. . . . no one asked or forced him to enter a plea of guilty."

A Miss Parkinson testified in the hearing below:

" . . . that she was Deputy Clerk [of the Juvenile Court] and on July 2, 1941 the information was read to him and that Charles Evans upon being asked by her if he plead guilty or not guilty, said 'I am guilty.' That a plea of guilty was entered. That sentence was deferred and he was placed on probation and Judge Bentley ordered him to pay $5.00 a week beginning July 5, 1941 at 9th Precinct to the Board of Public Welfare for the support of James Evans. On December 9, 1941, he was brought into court and being in arrears in the sum of $84.50 was sentenced to one year in District Workhouse.

"[Upon cross-examination] . . . that she did not read the information rapidly . . . . That she, Judge Bentley, Miss Tinsley and Charles Evans were only present on July 2, 1941; that an Assistant Corporation Counsel is never present on Wednesdays (July 2, 1941 was a Wednesday).

"That there was 'no necessity' of asking Charles Evans if he wanted a lawyer as he plead guilty; that he was not asked if he waived jury trial; that he was not asked if he wanted a lawyer before the information was read to him nor after it was read and before he was asked as to how he plead.

"That on back of the file she wrote in pencil; that No. 50735 was the number of the confidential file of Charles Evans; that this file was placed before Judge Bentley at the beginning of the proceeding on July 2, 1941; that the contents of the confidential file were not read nor revealed to Charles Evans; that this procedure is customary in Juvenile Court."

In the instant proceeding the trial court found that the petitioner had in the Juvenile Court voluntarily entered his plea of guilty, "fully understanding the nature of his act in so doing"—without coercion, deception or fraud; that at the time of entering the plea "he was not represented by counsel, nor was he advised of his right to counsel, nor of his right to a trial by jury"; that the minor child was in the state of Maryland on July 2, 1941. The trial court made no finding that the petitioner had competently and intelligently waived his right to the assistance of counsel. It nevertheless concluded that "the defendant's constitutional rights were not in any way violated . . ." and that his detention was legal. Upon these findings and conclusions, the court discharged the writ and dismissed the petition. This appeal was then taken.

In Johnson v. Zerbst, 1937, 304 U. S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the Supreme Court carefully explained the guaranty of the Sixth Amendment that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," and the duty of the federal courts in respect of this guaranty. In that case the petitioner and another, charged with uttering, passing and possessing counterfeit Federal Reserve notes, pleaded not guilty in a United States District Court in South Carolina, and were sentenced to a penitentiary. Thereafter in a habeas corpus proceeding they attacked the jurisdiction of the district court on the ground that they had not been accorded the right to the assistance of counsel. After reviewing the facts and the authorities, the Supreme Court held that the denial during trial of a criminal case of the constitutional right to the assistance of counsel would occasion loss of jurisdiction to convict, and that the conviction might be attacked in a habeas corpus proceeding in which an examination of the facts outside of, but not inconsistent with, the record in the criminal proceeding might be made in order to determine whether or not the constitutional right to the assistance of counsel had been protected either by the appointment of counsel or by a competent waiver thereof. In respect of the Sixth Amendment and the duty of the federal courts thereunder, the Supreme Court said:

" . . . *Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'* It embodies a realistic recognition of the obvious truth that the average defendant does not have

the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to ' . . . the humane policy of the modern criminal law . . . ' which now provides that a defendant ' . . . if he be poor, . . . may have counsel furnished him by the state . . . not infrequently . . . more able than the attorney for the state.'

"The ' . . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' *The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.*" [Italics supplied] [304 U.S. at pages 462, 463, 58 S.Ct. at page 1022, 82 L.Ed. 1461]

In respect of waiver the Court said:

" . . . It has been pointed out that *'courts indulge every reasonable presumption against waiver'* of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' *A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.* The determination of whether there has been an intelligent waiver of the right of counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." [Italics supplied] [304 U.S. at page 464, 58 S.Ct. at page 1023, 82 L.Ed. 1461]

And on this subject the Court said further:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. *This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.* While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record. * * *

*"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution.* * * *

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. *If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty.* A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus*. . . ."

[Italics supplied] [304 U.S. at pages 465, 467, 468, 58 S.Ct. at pages 1023, 1024, 1025, 85 L.Ed. 1461]

Finally, the Court recognized that:

"It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on *habeas corpus*. *When collaterally attacked, the judgment of a court carries with it a presumption of regularity*. Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. . . ." [Italics supplied] [304 U.S. at pages 468, 469, 58 S.Ct. at page 1025, 82 L.Ed. 1461]

But the Court made clear further that:

". . . *If in a habeas corpus hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ.*" [Italics supplied] [304 U.S. at page 469, 58 S.Ct. at page 1025, 82 L.Ed. 1461]

It is, however, contended by the District of Columbia that Johnson v. Zerbst does not apply to convictions upon pleas of guilty but only in the case of pleas of not guilty and trial and conviction thereon, and that therefore it does not govern in the instant case. *A priori*, there would seem to be no proper basis for such a distinction. Loss of life or liberty is as certain through sentence upon a plea of guilty as through sentence upon the verdict of a jury. The importance to an accused of the assistance of counsel in the event of a plea of not guilty and trial is patent. It is equally important to an accused, in determining in what manner he may properly meet a charge and before a decision as to the nature of his plea, to have the advice of counsel concerning, for example, the sufficiency of the indictment, the possible existence of a defense or bar under facts known to the accused but the legal import of which he may not know, the nature of the penalty provided for the offense charged, and the probable extent to which it will be imposed, under the facts involved, in the event of a plea of guilty. But the point raised by the District need not be determined upon an *a priori* basis. The Supreme Court in Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830, has negatived any possible support for the contention that the constitutional guaranty of the assistance of counsel in a criminal case is not applicable where there is a plea of guilty. In that case a conviction and sentence upon a plea of guilty in the United States District Court for Northern Texas was attacked in a habeas corpus proceeding upon allegations to the effect that the petitioner therein was without the assistance of counsel in the criminal case, that he did not waive the right to counsel, that the criminal court did not inquire whether he desired counsel or instruct him that he was entitled to counsel, and that he did not know he was entitled to counsel if he had no money to pay counsel himself; there were allegations also to the effect that the petitioner's plea of guilty had been entered as a result of deception, fraud and coercion on the part of the District Attorney. The officer against whom the writ was sought filed a return showing that he held the petitioner under a commitment issued by the criminal court, and attached to the return, in addition to copies of the indictment, sentence, commitment and the like, were affidavits to the effect that on the day of the trial the petitioner informed the District Attorney that he was guilty and was going to plead guilty, and that, when asked whether he had a lawyer, he stated that he did not want one; and to the effect that the petitioner had told the judge of the District Court in open court that he had no counsel and did not desire any, as he was guilty and intended to plead guilty. The petitioner filed a traverse in which, in addition to denying the assertions of the affidavits, he alleged facts which, if true, would have supported a conclusion that he was deceived and coerced into pleading guilty.[2] The Government contended that these pleadings presented no material issue

---

[2] The denial of the assertions of the affidavits was in terms of allegations to the effect that "at no time was petitioner informed, did he know or believe that he was entitled to the assistance of counsel for his defense, and that at no time did anyone ask him if he desired the assistance of counsel nor did anyone offer to procure such assistance for him; . . . that he was without money to pay for counsel and believed he could not obtain the assistance of counsel without money to pay a lawyer; . . . that he attended school to the fifth grade and

of fact, that the allegations of the petition and traverse did not show that the petitioner was in apparent or actual need of counsel, and did disclose that he voluntarily waived the right to counsel. This was a third question in the case. The other two were, first, was the trial court in the habeas corpus proceeding, on the filing of the petition for the writ, bound forthwith to issue the same and have the petitioner produced in answer to it, or could the court proceed—as it had proceeded—first by rule to show cause and return thereto; second, could the issues as made up under the rule and return be resolved by affidavits alone rather than testimony. After disposing of these two questions by holding that the procedure of rule and return was permissible, but that it had not been proper for the court to resolve the issues as made up in that case upon affidavits alone, the Court ruled upon the third question as follows:

"Without repeating the allegations of the petition and traverse, which have been summarized above, we think it clear that, taken together, they overcome the presumption of regularity which the record of the trial imports and that, if the facts alleged were established by testimony to the satisfaction of the judge, they would support a conclusion that the petitioner desired the aid of counsel, and so informed the District Attorney, was ignorant of his right to such aid, was not interrogated as to his desire or informed of his right, and did not knowingly waive that right, and that, by the conduct of the District Attorney, he was deceived and coerced into pleading guilty when his real desire was to plead not guilty or at least to be advised by counsel as to his course. *If he did not voluntarily waive his right to counsel,* or if he was deceived or coerced by the prosecutor into entering a guilty plea, *he was de-prived of a constitutional right. . . ."* [Italics supplied] [312 U.S. at page 286, 61 S.Ct. at page 579, 85 L.Ed. 830]

It is to be noted that the last sentence of the foregoing quotation is in the disjunctive; and the Court, in support of the first alternative, cited Johnson v. Zerbst. The opinion thus makes indisputably clear that the Supreme Court meant to rule that the doctrine of Johnson v. Zerbst with respect to the right of an accused to the assistance of counsel and the duty of a criminal court to see that that right is protected, applies to conviction and sentence upon a plea of guilty as well as to conviction and sentence upon a verdict after trial on plea of not guilty.[3]

 It is further suggested by the District of Columbia that the constitutional guaranty of the right to the assistance of counsel in a criminal case does not apply except in the event of "serious offenses." No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. The purpose of the guaranty is to give assurance against deprivation of life or liberty except strictly according to law. The petitioner would be as effectively deprived of his liberty by a sentence to a year in jail for the crime of non-support of a minor child as by a sentence to a year in jail for any other crime, however serious. And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one.

 In support of its contention that under the facts in the instant case there was no violation of the petitioner's constitutional rights, the District of Columbia relies primarily upon sixteen cases decided

---

had had no further schooling or education, was entirely unversed in the law and unable and unqualified to represent or act for himself in a criminal proceeding; that at no time was he asked to waive his right to the assistance of counsel nor did he by word or act state or indicate that he waived, or intended to waive, that right . . . ." (312 U.S. at pages 281, 282, 61 S.Ct. at page 577, 85 L.Ed. 830)

The allegations of the petition for the writ in the instant case were more meagre. They were to the effect merely "That he did not have the assistance of counsel. That he was not told that he could have counsel . . . ." But no objection was raised to the sufficiency of the petition.

[3] Cf. also Holiday v. Johnston, 1941, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L. Ed. 1392, wherein the Supreme Court held that the issues of fact in a habeas corpus proceeding involving a sentence to a penitentiary upon a plea of guilty could not be tried by a commissioner and ordered that the case be heard by a district judge on the question whether or not there had been a deprivation of the assistance of counsel in respect of a plea of guilty.

in other circuits. We cite these cases in the margin.[4] All but one of them[5] were decided prior to Walker v. Johnston. We have examined each of them with care. It would serve no useful purpose to discuss them individually and in detail. It is sufficient to indicate that for the following reasons they are not persuasive: In twelve of the sixteen[6] it was variously held that a waiver of the constitutional right to the assistance of counsel will ordinarily be, can fairly be, is, inferred, if an accused appears in court without counsel and fails to request that counsel be assigned. In view of the ruling in Johnson v. Zerbst that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in loss of fundamental rights,' " this basis of decision is not warranted.[7] Another one[8] of the sixteen cases holds that there is a presumption of law that a defendant knows of his constitutional right to the assistance of counsel. There is no more basis for such a presumption than for one that a defendant understands the rules governing the sufficiency of indictments, the admissibility of evidence, and the burden of proof, or other rules of substantive and adjective law, and the existence of such a presumption is negatived by the statement of the Supreme Court in Johnson v. Zerbst which we have italicized above that "The purpose of the constitutional guaranty of right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights . . . ." The remaining three cases[9] rule that an accused who pleads guilty voluntarily and intelligently is not within the ambit of the constitutional guaranty, for in the event of such a plea—so it is reasoned—there is no defense, and therefore the constitutional assurance that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his *defence*" is not operative. (Ital-

---

[4] Adkins v. Sanford, 5 Cir., 1941, 120 F.2d 471; Creel v. Hudspeth, 10 Cir., 1940, 110 F.2d 762; Kelly v. Aderhold, 10 Cir., 1940, 112 F.2d 118; Harpin v. Johnston, 9 Cir., 1940, 109 F.2d 434, certiorari denied 1940, 310 U.S. 624, 60 S. Ct. 898, 84 L.Ed. 1395; Walker v. Chitty, 9 Cir., 1940, 112 F.2d 79; Franzeen v. Johnston, 9 Cir., 1940, 111 F.2d 817; Jorgensen v. Swope, 9 Cir., 1940, 114 F. 2d 988; Macomber v. Hudspeth, 10 Cir., 1940, 115 F.2d 114, certiorari denied 1941, 313 U.S. 558, 61 S.Ct. 833, 85 L.Ed. 1519; Odom v. Aderhold, 10 Cir., 1940, 115 F.2d 202, certiorari denied 1941, 312 U. S. 683, 61 S.Ct. 610, 85 L.Ed. 1121; Buckner v. Hudspeth, 10 Cir., 1939, 105 F.2d 396, certiorari denied 1939, 308 U. S. 553, 60 S.Ct. 99, 84 L.Ed. 465; Cooke v. Swope, D.C.W.D.Wash.1939, 28 F. Supp. 492, affirmed 9 Cir., 1940, 109 F.2d 955; McCoy v. Hudspeth, 10 Cir., 1939, 106 F.2d 810; Cundiff v. Nicholson, 4 Cir., 1939, 107 F.2d 162; Parker v. Johnston, D.C.N.D.Cal.1939, 29 F.Supp. 829, affirmed on other grounds, 9 Cir., 1940, 109 F.2d 157; Erwin v. Sanford, D.C.N. D.Ga.1939, 27 F.Supp. 892; Collins v. Johnston, D.C.N.D.Cal.1939, 29 F.Supp. 208.

[5] Adkins v. Sanford, cited supra note 4.

[6] Creel v. Hudspeth, Kelly v. Aderhold, Walker v. Chitty, Franzeen v. Johnston, Jorgensen v. Swope, Macomber v. Hudspeth, Odom v. Aderhold, Buckner v. Hudspeth, McCoy v. Hudspeth, Cundiff v. Nicholson, Erwin v. Sanford, Collins v. Johnston, all cited supra note 4.

[7] The District Court of the United States for the Middle District of Pennsylvania, in United States v. Hiatt, D. C.M.D.Pa.1940, 33 F.Supp. 545, in an opinion by Johnson, District Judge, has recognized that this theory of waiver is in conflict with Johnson v. Zerbst. Referring to Buckner v. Hudspeth, cited supra note 4, which among Federal cases seems to have been one of the first to decide that a waiver of the right to counsel will be inferred from appearance without, and failure to request, counsel, Judge Johnson said: "The Buckner case does hold that an implied waiver of the right to counsel will result where a defendant does not request that counsel be appointed for him, but it is based upon numerous decisions of state courts which are flatly contrary to the express ruling of the United States Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. The Supreme Court there held that the right to the assistance of counsel is a fundamental constitutional right guaranteed by the Sixth Amendment, that there is a presumption against waiver of such rights, and that there is no presumed acquiescence in the loss of these fundamental constitutional rights. . . ." 33 F.Supp. at page 546.

[8] Harpin v. Johnston, cited supra note 4.

[9] Adkins v. Sanford, Cooke v. Swope, Parker v. Johnston, all cited supra note 4.

640

ics supplied) This proposition wrongly assumes that a layman is capable of determining whether or not he has a defense to a charge of crime; and it is in conflict with the recognition by Walker v. Johnston that the constitutional guaranty does apply in respect of pleas of guilty.

■ It appears that the trial court in the instant proceeding was in part influenced by this last theory, because the court made a finding that the "Defendant entered this plea of guilty fully understanding the nature of his act in so doing," and made no finding that he had waived his right to the assistance of counsel. That is to say, the court seems to have been of the view that the constitutional guaranty was not operative. But not only was this a mistake as to the law, but also the finding itself was not warranted. As appears above, the petitioner testified that "he appeared and a paper was read to him and he was asked if he plead guilty of failing to support James Evans. He said that he was guilty *of not paying for support.* The clerk said then do you plead 'Guilty.' The judge then ordered him to pay $5.00 a week. James Evans was not there. He was not given a chance to explain himself. . . . *He only understood part of what was read to him. The part he understood was that he was not supporting James Evans.* He does not remember the parts he did not understand." (Italics supplied) Since there was no contradiction of this testimony, and since the court stated that "it was *impressed by Charles Evans' truthfulness,*" we think is not possible reasonably to reach any other conclusion upon the foregoing than that all the *petitioner intended to ad-* mit was that he was not paying money for the support of James Evans. We think it *not possible reasonably to conclude that* he understood what he was doing in entering a plea of guilty, especially in view of *his statement that he was not given a* chance to explain himself and that he only understood part of what was read to him.

■ In one of the cases relied upon by the District of Columbia,[10] it is said that since in the habeas corpus proceeding the petitioner did not deny his guilt of the crime to which he had pleaded guilty, or contend that he had not understood the charge, or that he was misled in any way as to its character, counsel, even had they been assigned in the criminal case, had they dealt honestly with the petitioner and the court, could have entered no other plea than that which he himself had entered. But the scope of review on habeas corpus is limited to examination of the jurisdiction of the court whose judgment of conviction is challenged, Bowen v. Johnston, 1939, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, and does not therefore include the consideration of the guilt or innocence of the petitioner.[11] And the assumption that had counsel been appointed for the petitioner at the outset of the criminal proceeding they could honestly have entered no other plea than that which the petitioner himself, without benefit of counsel, had entered, is, we think, unwarranted and dangerous. As was very recently said by the Supreme Court in Glasser v. United States, January 19, 1942, 62 S.Ct. 457, 467, 86 L.Ed. ——, "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." And it is to be noted that had counsel been appointed in the instant case to assist the petitioner, their services might have been much more than formal. While we do not assume now to rule thereon, questions of substantial character might have been raised by counsel in the Juvenile Court. Counsel might have raised the question, not yet determined in this jurisdiction, whether or not, the minor child of the petitioner having been in Maryland during the period of non-support alleged, a crime had been committed under the local statute. Upon investigation and determination of the question as to how long the petitioner had had, as stated in the evidence, a house large enough to accommodate his family, including James Evans (who it appears had been sent to La Plata, Maryland, by the Board of Welfare for lack of sufficient housing) counsel might conceivably have made a defense available to the petitioner, or (had it been possible to prove the petitioner's willingness and ability to receive James Evans back into his home under con-

---

[10] Cundiff v. Nicholson, cited supra note 4.

[11] This point was not recognized by the trial court in the instant proceeding for one of the findings was to the effect that the petitioner "gave testimony clearly showing that he was guilty of the charge lodged against him in the Juvenile Court."

ditions suitable for the child's welfare), might have secured a diminution of punishment. Again, counsel might, even if the plea of guilty had ultimately been determined upon, have raised serious objection to the imposition of a penalty in part upon the basis of "the contents of the confidential file . . . not read nor revealed to Charles Evans," under the "procedure . . . customary in [the] Juvenile Court."

In view of the foregoing we are obliged to conclude that in the instant case the trial court erred in dismissing the petition and discharging the writ, in failing, that is to say, to hold that the petitioner's constitutional rights had been violated in the Juvenile Court with consequent loss of jurisdiction in that tribunal to convict and sentence the petitioner: Under the undisputed evidence, the petitioner "was not told that he could have a lawyer nor that he was waiving his right to counsel . . . . He did not know that he could have an attorney . . . ." Moreover, as we have pointed out above, the trial court expressly found that at the time of entering his plea the petitioner "was not represented by counsel, nor was he advised of his right to counsel . . . ." And as we have also said, there was no finding and could have been none under the evidence, that the petitioner had competently and intelligently waived his right to the assistance of counsel. Since as stated in Johnson v. Zerbst a waiver is an intentional relinquishment or abandonment of a known right or privilege, and since the petitioner did not know and was not advised of his right to counsel, he could not waive the same.

Since this is true and since, as said in Johnson v. Zerbst, "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel," the contention of the District of Columbia in the instant case that the petitioner's conviction was valid amounts in effect to an assertion that the constitutional guarantee that in criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense does not apply at the arraignment, where the accused is required to stand at the bar, to hear the charge, and to enter a plea. But an accused is no less an accused at that stage of the proceedings than at any other, and, as we have pointed out above, no less in need at that stage than at any other of the assistance of counsel. The constitutional guarantee makes no distinction between the arraignment and other stages of criminal proceedings in respect of the application of the guarantee. As said in the statement quoted from Johnson v. Zerbst, " 'If charged with crime, he [the accused] is incapable, generally, of determining for himself whether the indictment is good or bad. . . . He requires the guiding hand of counsel *at every step* in the proceedings against him.' " (Italics supplied)

The procedure followed in the Juvenile Court in the instant case was in disregard of the ruling of Johnson v. Zerbst that if the accused in a criminal case is not represented by counsel and has not competently and intelligently waived his constitutional right to counsel, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his liberty, and in disregard of the further ruling in that case that there is a serious and weighty responsibility upon a trial judge of determining whether there is an intelligent and competent waiver by the accused, and in disregard also of the indication in Walker v. Johnston that the principles announced in Johnson v. Zerbst apply to cases involving a plea of guilty. Johnson v. Zerbst was decided in May, 1938, and Walker v. Johnston in February, 1941. The Juvenile Court proceedings in the instant case were on July 2 and December 9, 1941. We can hardly assume that the Juvenile Court was unaware of these decisions.

We remind the Juvenile Court that the social considerations underlying the Juvenile Court Act and the informality of procedure permitted under it are not—cannot be—incompatible with according to one accused of crime the rights guaranteed him by the Constitution. The duty upon a court of according an accused such rights is positive and affirmative and must not be ignored.

In accordance with the foregoing the order of the District Court is

Reversed and the case remanded for further proceedings not inconsistent with this opinion.