STONEBREAKER v. SMYTH, Superintendent of Virginia State Penitentiary.

No. 5604.

Circuit Court of Appeals, Fourth Circuit.

Aug. 20, 1947.

SOPER Circuit Judge, dissenting.

———◆———

W. A. Hall, Jr., of Richmond, Va., for appellant.

M. Ray Doubles, Asst. Atty. Gen. of Virginia (Abram P. Staples, Atty. Gen. of Virginia, on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order discharging a writ of habeas corpus and dismissing the petition for the writ. Petitioner is incarcerated in the Virginia State

Penitentiary under three sentences of the Corporation Court of the City of Newport News, Virginia, imposed in the year 1931 upon pleas of guilty by petitioner to three indictments charging armed robbery.

In 1943 petitioner by petition for writ of habeas corpus in the courts of Virginia attacked the judgment and sentences under which he was imprisoned, on the ground that he had been denied the due process of law guaranteed by the 14th Amendment of the Federal Constitution in the proceedings in which they were entered. He alleged, as the basis of this contention, that at the time he was sentenced he was a minor twenty years of age, ignorant and uninformed as to his right to counsel, and incapable of representing himself, and that he had pleaded guilty because of a confession which had been unfairly obtained from him. The petition was heard upon its merits by the Corporation Court of the City of Newport News, evidence was taken and the facts upon which petitioner relied were fully developed. The Corporation Court of Newport News, after full hearing and consideration, discharged the writ and dismissed the petition, whereupon petitioner applied to the Supreme Court of Appeals of Virginia for a writ of error, which was denied by that court. Thereupon, petitioner applied to the United States Supreme Court for writ of certiorari; and this was denied on October 16, 1944. Stonebreaker v. Smyth, 323 U.S. 754, 65 S.Ct. 81, 89 L.Ed. 603.

After a delay of over two years, during which the Supreme Court had decided a number of cases on right to counsel and the effect of pleas of guilty by prisoners without counsel, petitioner, on January 13, 1947, filed the petition in the court below relying upon the identical grounds urged in the state court under the 14th Amendment and attaching to his petition a transcript of the proceedings in that court. The District Judge dismissed the petition on the ground that the matter had been fully heard on habeas corpus in the state courts and that the Supreme Court of the United States had denied certiorari, basing his decision on White v. Ragen 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. The petitioner has appealed, his principal contention on appeal being, that because of recent Supreme Court decisions, which he thinks support his position on the merits, his is not such a case as the courts "will not usually re-examine," but that it should be re-examined and relief granted.

We are confronted at the outset with the fact that the case presented by petitioner is precisely the same as that in which relief was denied by the Virginia courts and in which certiorari was denied by the Supreme Court of the United States. The rights of petitioner were fully presented in that case and the Virginia courts had full power to grant the relief asked, had they thought petitioner entitled to it. The facts were fully before the Supreme Court of the United States on certiorari; and proper respect for that court compels the conclusion that if it had thought that the record showed a denial of petitioner's constitutional rights, certiorari would have been granted and petitioner would have been afforded relief. While action of the Virginia courts and the denial of certiorari by the Supreme Court were not binding on the principle of res judicata, they were matters entitled to respectful consideration by the court below; and in the absence of some most unusual situation, they were sufficient reason for that court to deny a further writ of habeas corpus. It would be intolerable that a federal district court should release a prisoner on habeas corpus after the state courts have refused him relief in precisely the same case on a similar writ and the United States Supreme Court has refused to review their action on certiorari. This would be, in effect, to permit a federal district court to review the Supreme Court of the United States as well as the highest court of the state. The rule in such cases was stated in the case of White v. Ragen 324 U.S. 760, 764, 765, 65 S.Ct. 978, 981, 89 L.Ed. 1348, relied on by the court below, as follows:

"If this Court denies certiorari after a state court decision on the merits, or if it reviews the case on the merits, a federal District Court will not usually re-examine on habeas corpus the questions thus adjudi-

cated. Ex parte Hawk, supra, 321 U.S. [at page] 118, [64 S.Ct. 448, 88 L.Ed. 572]."

The citation of Ex parte Hawk shows what the court had in mind in the use of the words "will not usually re-examine" in the statement just quoted; for the court had pointed out in that case the sort of cases in which the district court would be justified in granting habeas corpus notwithstanding the denial of certiorari in cases where the state court had refused to grant relief. These were cases where resort to state court remedies had failed to afford a full and fair adjudication of the federal contentions raised either because the state afforded no remedy or because the remedy afforded proved in practice unavailable or seriously inadequate. The court said in that case, Ex parte Hawk, 321 U.S. 114, 118, 64 S.Ct. 448, 450, 88 L.Ed. 572:

"Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated. Salinger v. Loisel 265 U.S. 224, 230, 232, 44 S.Ct. 519, 521–522, 68 L.Ed. 989. But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy, see Mooney v. Holohan, supra, 294 U.S. [103, at page] 115, 55 S.Ct. [340], 343, 79 L.Ed. 791, 98 A.L.R. 406, or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, cf. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Ex parte Davis, 318 U.S. 412, 63 S.Ct. 679, [87 L.Ed. 868], a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus."

In House v. Mayo 324 U.S. 42, 65 S.Ct. 517, 520, 89 L.Ed. 739, where the petition in the district court alleged adequate grounds for relief and that court refused to entertain the petition because the Supreme Court had denied certiorari to re-view a state court decision denying relief on habeas corpus, the Supreme Court in reversing this action was at pains to point out that the usual rule was not applicable because the exceptional situation pointed out in Ex parte Hawk was present in that the basis of the state court's decision was that the remedy sought in the state court was not permitted by state law. What the Supreme Court said in this connection is illuminating here, as it is clearly implied that the usual rule would have been applicable but for the fact that under state law relief was not obtainable in the habeas corpus proceedings instituted in the state court, which clearly distinguishes the case from the one at bar. The court reconciles the apparent discrepancy between the rule that denial of certiorari imports no expression of opinion upon the merits with the rule that a district court should give that fact consideration in habeas corpus cases, by pointing out that it is in cases where the lower court has no power under state law to afford relief that the latter rule is inapplicable. The court said:

"The district court was of the opinion that 'petitioner has had a full, complete, and competent consideration and decision in the Supreme Court of Florida of all the various matters here sought again to be presented.' The district court had reference to the decisions of the Florida Supreme Court referred to by petitioner in his papers filed with the district court. They were: House v. State 127 Fla. 145, 172 So. 734, a writ of error from petitioner's conviction; House v. State, 130 Fla. 400, 177 So. 705, an application for leave to file a coram nobis proceeding; and the denial by the Florida Supreme Court without opinion of three petitions for habeas corpus filed by petitioner. By each form of proceeding petitioner attempted to raise the questions he now raises in the present petition; but in each instance, so far as appears, the Florida Supreme Court, without considering the merits of petitioner's contentions and without affording a hearing on the merits, denied relief to petitioner, on the ground that the particular remedy sought was not the appropriate one under Florida law to raise those contentions. See House v. State 127 Fla. 145, 148,

172 So. 734; House v. State 130 Fla. 400, 406, 177 So. 705; cf. Skipper v. Schumacher 124 Fla. 384, 401–404, 169 So. 58.

"The district court also referred to a denial by this Court of a petition for certiorari, filed here after the denial by the Florida Supreme Court of one of the applications for habeas corpus. See House v. Mayo, 322 U.S. 710, 64 S.Ct. 1058, [88 L.Ed. 1553]. The district court thought that this was an expression 'of the opinion that no meritorious question is presented by the matters of which petitioner here complains.' But as we have often said, a denial of certiorari by this court imports no expression of opinion upon the merits of a case. * * * It is true that where a state court has considered and adjudicated the merits of a petitioner's contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily re-examine upon writ of habeas corpus the questions thus adjudicated. See Ex parte Hawk, supra, 321 U.S. at page 118, 64 S. Ct. [448], at page 450 [88 L.Ed. 572]. But that rule is inapplicable where, as here, the basis of the state court decision is that the particular remedy sought is not one allowed by state law, for in such a case this Court lacks jurisdiction to review the decision. Woolsey v. Best 299 U.S. 1, 2, 57 S.Ct. 2, 81 L.Ed. 3; State of New York ex rel. Whitman v. Wilson 318 U.S. 688, 690, 63 S.Ct. 840, 841, 87 L.Ed. 1083; Williams v. Kaiser, supra, 323 U.S. [471], 473, 476–479, 65 S.Ct. [363] pages 365—368 [89 L.Ed. 398]."

█ The petition sets forth facts upon which, under recent decisions of the Supreme Court, petitioner is probably entitled to relief in the proper tribunal. See De Meerleer v. People of State of Michigan 329 U.S. 663, 67 S.Ct. 596; Canizio v. People of State of New York 327 U.S. 816, 66 S.Ct. 699, 90 L.Ed. 1039; Rice v. Olson 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Tomkins v. State of Missouri 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407. He argues that these recent decisions take his case out of the ordinary rule, since they could not have been before the state court at the time his case was considered on habeas corpus or before the Supreme Court at the time certiorari was denied. His contention is that they have resulted in a change or at least a clarification of the law with respect to the necessity of counsel, and that he is entitled to have his case reconsidered in the light of the law as they have established it. We are inclined to think that this last contention is correct, but it does not follow that the federal district court is the place to have it reconsidered. He should file another petition in the state court. In view of the change in the law, if there be a change as he contends, he has not exhausted his remedies in the state courts until he seeks a remedy there on the basis of the decisions which he claims give him a right to relief. The former proceeding in the state court will not preclude the filing of a petition now, since the principle of res judicata is no more applicable to habeas corpus proceedings in the courts of Virginia than in the federal courts; and until action of the state courts has been invoked on the basis of the decisions relied on, it cannot be said that state remedies have been exhausted in the present status of the case so as to justify resort to the federal jurisdiction. It is, of course, well settled that petitioner may not file petition for habeas corpus in the federal court until his remedies in the state courts have been exhausted. Ex parte Hawk 321 U.S. 114, 116, 117, 64 S.Ct. 448, 88 L.Ed. 572; White v. Ragen 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348.

The order appealed from will be affirmed, without prejudice, however, to the right of petitioner to apply to the state courts for relief. Application to those courts will enable them to reconsider their prior ruling in the light of recent Supreme Court decisions with review by the Supreme Court, and will avoid the necessity of having any lower federal court review proceedings of a state tribunal.

Not only do we think that what we have decided is in accord with the practice as laid down by the Supreme Court, but we think also that, if petitioner is entitled to relief, it will afford him relief more expeditiously than through a reversal of the decision below. A reversal would not mean

that petitioner would be entitled to immediate discharge. He would be held and turned over to the state courts for trial. Mitchell v. Youell 4 Cir. 130 F.2d 880, 882. If certiorari to review our decision were applied for, he would necessarily be held in prison for several months before being brought to trial. Under our judgment, he can apply at once to the Virginia courts for habeas corpus, and if they are of opinion that he is entitled to relief under the recent Supreme Court decisions, they can grant him immediate relief. If relief is denied, he can apply for certiorari and have the matter heard by the Supreme Court of the United States with little if any more delay than would be involved in the application for certiorari to review our decision, which would almost certainly be made if we were to take the habeas corpus matter out of the hands of the state courts. If petitioner is entitled to relief under the recent decisions of the Supreme Court, however, we must assume that the Virginia Courts will grant him that relief. It would not be fair to those courts to assume that they would not follow the decisions of the Supreme Court of the United States, or to hold that state remedies have been exhausted because of an application made before the handing down of the decisions of the Supreme Court now relied on as changing or clarifying the law.

Affirmed.

SOPER, Circuit Judge (dissenting).

The examination of the case starts with the astonishing circumstance that the appellant, who applies for a writ of habeas corpus, has been imprisoned for sixteen years in the Virginia State penitentiary as the result of invalid convictions in violation of his rights under the Federal Constitution. Obviously it is our duty to release the prisoner from this illegal detention at the earliest possible moment and to remand him to the Virginia authorities for a new trial in accordance with law.

The court, however, has decided to dismiss the application for the writ and to remit the prisoner to the state courts for such relief as they may see fit to give him. This action is taken although the prisoner has already applied to the state trial court and to the Supreme Court of Appeals of the state, and has been denied relief without opinion by either tribunal. The prisoner has also applied to the Supreme Court of the United States for writ of certiorari to the Virginia court, but has been denied a hearing. This latter action, however, throws no light on the controversy for the Supreme Court has often said that a denial of certiorari by it imports no expression of opinion upon the merits of a case. For example, it used this language in House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 89 L.Ed. 739, in respect to a denial of certiorari in a habeas corpus case.

The court in the pending proceeding evidently indulges the hope that the Virginia courts will change their attitude, when and if the case goes back to them; and the court prefers this procedure because of the respect we entertain for the Virginia courts and because it was held in House v. Mayo, 324 U.S. 42, 48, 65 S.Ct. 517, 89 L.Ed. 739, and White v. Ragen, 324 U.S. 760, 764, 765, 65 S.Ct. 978, 89 L.Ed. 1348, that where a state court has considered the merits of a prisoner's contention upon a writ of habeas corpus, and the Supreme Court of the United States has declined to review the state court's decision, a federal court will not ordinarily or usually re-examine the question thus adjudged.

On this line of argument the crucial inquiry is whether or not the circumstances surrounding this case may be characterized as unusual or extraordinary. It is submitted that only one answer can be given to this inquiry, and that, in the affirmative. Indeed the court itself seems to entertain this view, for otherwise it would simply affirm the judgment below and would not venture to suggest that the state courts re-examine the merits of a case on which they have already passed.

But let the facts speak for themselves; and there will be general agreement that the procedure at the trial of the prisoner in 1931 in the state court was extraordinary and unusual. In that year, the prisoner was a youth of twenty years, who had served two years and nine months in the Coast Artillery of the United States Army.

He had had an education as far as the seventh grade but had had no practical experience except that in the army. He had had no past criminal record and no contact with courts of justice. On October 5, 1931, he had been on a three-day leave and he and a comrade in arms were traveling in an automobile at night on the road near Yorktown on their way to Richmond, when they were arrested by state officers who searched them, handcuffed them and found a gun in the car. They were taken to a police station in Newport News and charged with armed robbery in four cases. Under Section 4405 of the Virginia Code this offense carries a punishment of death, or confinement in the penitentiary for life, or any term not less than eight years.

At the police station the boys were separated, and shortly thereafter the appellant's companion confessed. The testimony of the appellant at the habeas corpus hearing below was that he denied guilt of the charges at the station house but was told by the arresting officers that he would get "the chair" if he did not confess; and under this pressure he signed a written confession prepared for him. The officers denied that any threats were made and testified that both boys confessed voluntarily that they had held up attendants in gasoline stations and had committed the robberies in order to obtain money to meet payments which were due on an automobile that they had purchased. The next morning the defendants were taken before the police magistrate and pleaded guilty to the charges. It is conceded that at no time after the arrest did the defendants have counsel or any friend to advise them; nor were they told that they were entitled to counsel nor was any counsel offered to them.

There were in all four indictments for the robberies of four individuals, two of which occurred in September, one in August and one in October, 1931. The indictments charged that the boys succeeded in obtaining small amounts of money, ranging from six to sixty-five dollars in each case. Three indictments were found on the 10th day of November, 1931, in the Corporation Court for the City of Newport News, and one indictment in the Circuit Court of Warwick County on the 16th day of November, 1931. No witnesses to the crime were examined by the Grand Jury, but the indictments were found upon the testimony of the police officers as to the confessions. On November 16, 1931, the defendants pleaded guilty to one indictment in the Circuit Court of Warwick County and were sentenced to eight years in the penitentiary. On the 17th day of November the defendants pleaded guilty to the three indictments in the Corporation Court for the City of Newport News and were sentenced to twenty years on each of two cases, and ten years on the third case, these sentences to be consecutive and to begin at the expiration of the eight-year sentence previously imposed in Warwick County. No witnesses to the crimes were produced in any of these proceedings, the sentences being pronounced upon the testimony of the officers as to the confessions. The defendants did not have the benefit of counsel, and they were not advised as to their rights in the premises, although the right to counsel is recognized in Virginia as a fundamental one under the state Bill of Rights, Watkins v. Commonwealth, 174 Va. 518, 6 S.E.2d 670.

We are concerned at this time only with the cumulative sentences of fifty years, since the eight-years' sentence has been served. There can be no doubt that the imposition of this lifetime imprisonment upon a young and ignorant youth, without the advice of counsel or the assistance of friends, and without advice or instruction from the judges who imposed the sentences, or from any one else, was a flagrant violation of the prisoner's constitutional right. Equally true is it, and fortunately so, that in the administration of criminal justice in this country this trial was a rare and unusual occurrence. The law on the subject has been made clear by decisions of our highest court. See Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Tompkins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed.

1367; Canizio v. People of State of New York, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545; De Meerleer v. People of State of Michigan, 329 U.S. 663, 67 S.Ct. 596; Foster v. People of State of Illinois, 67 S.Ct. 1716.

In Williams v. Kaiser, supra, the court considered the application for relief on habeas corpus of a prisoner who, without the advice of counsel, pleaded guilty to a charge of robbery by means of a deadly weapon. Speaking of the distinction between the degrees of robbery and the degrees of larceny, the court said (323 U.S. at pages 474, 475, 476, 65 S.Ct. at page 366, 89 L.Ed. 398):

" * * * These involve technical requirements of the indictment or information, the kind of evidence required for conviction, the instructions necessary to define the several elements of the crime, and the various defenses which are available. These are a closed book to the average layman. These considerations underscore what was said in Powell v. [State of] Alabama, supra, 287 U.S. [45], at page 69, 53 S.Ct. [55] at page 64, 77 L.Ed. 158, 84 A.L.R. 527: 'Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.' Those observations are as pertinent in connection with the accused's plea as they are in the conduct of a trial. The decision to plead guilty is a decision to allow a judgment of conviction to be entered without a hearing — a decision which is irrevocable and which forecloses any possibility of establishing innocence. If we assume that petitioner committed a crime, we cannot know the degree of prejudice which the denial of counsel caused. See Glasser v. United States, 315 U.S. 60, 75, 76, 62 S.Ct. 457, 467, 468, 86 L.Ed. 680. Only counsel could discern from the facts whether a plea of not guilty to the offense charged or a plea of guilty to a lesser offense would be appropriate. A layman is usually no match for the skilled prosecutor whom he confronts in the court room. He needs the aid of counsel lest he be the victim of overzealous prosecutors, of the law's complexity, or of his own ignorance or bewilderment."

In De Meerleer v. People of State of Michigan, supra, where there was a plea of guilty to the crime of murder, the court said (329 U.S. at page 665, 67 S.Ct. at page 597):

"Here a seventeen year old defendant confronted by a serious and complicated criminal charge, was hurried through unfamiliar legal proceedings without a word being said in his defense. At no time was assistance of counsel offered or mentioned to him, nor was he apprised of the consequences of his plea. Under the holdings of this Court, petitioner was deprived of rights essential to a fair hearing under the Federal Constitution."

It has been suggested, and it is doubtless true, that these decisions gave the profession a clearer conception than it had previously possessed of the rule as to a defendant's right to counsel in a criminal case. Certain it is that in many cases a plea of guilty was thought to involve that "intelligent waiver" of the right to counsel which was recognized in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461, 146 A.L.R. 357, as consistent with the constitutional requirement. This view was not unnatural, for the courts knew that in the vast majority of cases no injustice had been inflicted upon defendants who pleaded guilty without the advice of an attorney, and there was the fear, which has been justified by subsequent

events, that the discussion of the matter would bring forth large numbers of applications for writs of habeas corpus for which no justification existed.

However this may be, the view was not held by all the courts, as is shown by the thoughtful discussion of Judge Stephens in Evans v. Rives, 75 U.S.App.D.C. 242, 130 F.2d 633. There has been in fact no change in the law since the hearing of the habeas corpus case in the Virginia courts, but merely an application of the rule to varying circumstances as usually happens in the development of a legal principle, and the result has been that what is meant by an "intelligent waiver" has now been clarified by illustration. With respect to the case at bar, it is quite clear, as every one seems to admit, that there was no waiver of the right to counsel or indeed any reason to believe that the existence of the privilege was known to the defendant. Furthermore, it is well nigh certain that if the robbery cases had been investigated by competent counsel for the defense, and the past history of the defendants had been disclosed, the court would have realized that the crimes, serious though they were, did not justify the imposition of a sentence for life.

The refusal of the court in the pending case to act upon the merits of the case means that the illegal imprisonment of the appellant will be inevitably prolonged. We have no power to speak for the state court or to control its decisions, and we have no assurance that it will change its position if the defendant seeks its aid. If it stands firm, so much additional invalid sentence must be served as the tedious progress of the case through the state courts up to the Supreme Court of the United States will involve. In any event, some substantial period of time must elapse before the state court can act, while it is within our power to correct the wrong today. We should exercise the power immediately, bearing in mind that the rights of the individual are to be preferred to the niceties of judicial procedure, or to considerations of comity between the state and federal courts.

The appellant has exhausted his remedies in the state courts; and there is no justification or precedent for the requirement that he apply to them a second time to decide the precise question they have already determined.