Chief Judge Desmond (dissenting).
Just a few months ago, in People v. Witenski (15 N Y 2d 392), we held that the defendant’s constitutional rights were violated by the failure to notify *315 him of his right to assignment of counsel even though the amount involved in the alleged theft was no more than $2 and the imprisonment ordered was for a few days only. Now the majority is holding that this constitutional right somehow disappeared in the present cases simply because the Legislature chose to label these wrongdoings as “ traffic infractions ” rather than “ crimes ”, and even though the penalties here imposed are far greater than those in Witenski and include not only substantial fines but imprisonment for considerable periods. Because we do not believe that constitutional rights are so readily abolished, we dissent. The majority attempts to justify this cavalier treatment by describing a supposedly chaotic result which, so they prophesy, would result from assigning counsel to vast numbers of defendants in traffic cases. It is true that in each of the years 1964 and 1965 (the latter estimated) there were in the Criminal Court of the City of New York about two million prosecutions on such charges. Of course we are not suggesting that counsel be assigned to these vast multitudes. In New York City in such cases about 98% of the defendants it appears plead guilty and there is no question of assignment of counsel as to them. As to the 2% who plead not guilty we are not insisting that counsel be assigned but only that they be told, if they are indigent, they may have assigned counsel. Since almost all of these defendants are either owners of automobiles or employed as drivers of automobiles the number who could successfully plead indigence would be very small indeed. Furthermore, the dissenters would require that the notification as to the availability of assigned counsel be limited to those cases only (“ moving violations ”) where there is possibility of substantial punishment. In the large cities and in the few instances therein where a demand is made for such assignments in traffic infraction cases the Legal Aid Society could readily handle this small additional burden.
It is true that by an amendment to section 699 of the Code of Criminal Procedure effective December 1, 1965 (see L. 1965, ch. 878) the Legislature has attempted to create an exception where only “ traffic infractions ” are charged to the general requirement that a person charged with any criminal offense must be informed as to his right to assigned counsel if he claims indigence. Curiously enough that attempted exception does *316 not run as to violations of local ordinances. Necessarily the purported exception is invalid, under the rationale of People v. Witenski (15 N Y 2d 392, supra) and similar cases, at least when the prosecution is for “ moving violations ” for which sentences which include substantial imprisonment are authorized.
We express no new idea when we urge that, where imprisonment threatens, constitutional guarantees as to counsel must apply to “ non-serious ” as well as “ serious ” offenses. We quote the following from Evans v. Rives (126 F. 2d 633, 638 [1942]) cited with approval earlier this year by another United States Court of Appeals in Harvey v. State of Mississippi (340 F. 2d 263, 271): “ It is further suggested by the District of Columbia that the constitutional guaranty of the right to the assistance of counsel in a criminal case does not apply except in the event of ‘ serious offenses.’ No such differentiation is made in the wording of the guaranty itself, and we are cited to no authority, and know of none, making this distinction. The purpose of the guaranty is to give assurance against deprivation of life or liberty except strictly according to law. The petitioner would be as effectively deprived of his liberty by a sentence to a year in jail for the crime of non-support of a minor child as by a sentence to a year in jail for any other crime, however serious. And so far as the right to the assistance of counsel is concerned, the Constitution draws no distinction between loss of liberty for a short period and such loss for a long one.” We call attention, too, to a rule adopted June 29, 1964, by the Supreme Court of Massachusetts and requiring that a defendant be told about his right to counsel and assignment of counsel, whenever charged with any crime for which a sentence of imprisonment may be imposed. (See 347 Mass. 809.)
In People v. Letterio, the first above-entitled cause, the defendant appeals from a judgment which (as modified in defendant’s favor by the Appellate Term) sentenced him to a fine of $1,030 (or in default of payment to 135 days’ imprisonment) plus 42 days’ imprisonment. This judgment followed defendant’s plea of guilty before a Judge of the Criminal Court of the City of New York to 10 “ traffic infractions ” (see Vehicle and Traffic Law, § 155; N. Y. City Crim. Ct. Act, § 31) consisting of 7 instances of speeding in his automobile and 3 other “ moving ” *317 violations. The Appellate Term, except as to modifying the penalties, affirmed without opinion.
In the case second above entitled (People v. Kohler) defendant after a trial before another Judge of the Criminal Court of the City of New York was found guilty of a “ traffic infraction ” being a speeding violation and was sentenced to pay a fine of $100 or in default of payment to serve 30 days in the workhouse and, in addition, a term of 10 days’ imprisonment was ordered to which was added the suspension of defendant’s automobile operator’s license for six months. At the Appellate Term the judgment was reversed and a new trial ordered.
On each of these present appeals (by the defendant in Letterio and by the People in the Kohler case) the question is the same: was the defendant deprived of any rights, statutory or constitutional, by the failure of the Trial Judge to inform defendant fully as to his right to counsel including assignment of counsel? In the Letterio case when the case was called for trial the “ bridgeman ” (court attache) in the presence of the Judge asked defendant: “ Are you ready to proceed in this court without a lawyer?” Defendant answered: “Yes, sir”. In the other case (Kohler) the Judge asked defendant: “ Do you want a lawyer ? ’ ’ Defendant Kohler said: “ No ”. The meaning of the colloquy in each ease was the same, that is, defendant on being questioned told the court that he had no lawyer and was ready to go on without one. The trouble is that neither defendant was told that he had a right to have counsel assigned to him nor indeed was he informed that he had a right to retain counsel and to have an adjournment for that purpose (see People v. Marincic, 2 N Y 2d 181; People v. Witenski, 15 N Y 2d 392, supra). This brings us to the inquiry as to whether in the Criminal Court of the City of New York, in prosecutions for so-called traffic violations or offenses which are not crimes in the sense of being felonies or misdemeanors, there is any requirement of constitutional or statutory law that the court spell out for defendant his right to be represented by a lawyer and to have a lawyer assigned to him if he cannot afford to retain one. We conclude that there is.
The majority opinion in Kohler’s case held that section 41 of the New York City Criminal Court Act (effective in 1962 when the new Criminal Court came into existence) overruled *318 People v. Felberbaum (9 N Y 2d 213). The Felberbaum holding was that there was no statute requiring a New York City Magistrate, in a prosecution on a speeding charge under the New York City Traffic Regulations, to inform the defendant of his right to the aid of counsel. In Felberbaum it was decided by this court that as of 1961 neither section 699 of the Code of Criminal Procedure nor any other statute made such a requirement. While a constitutional question was urged and passed on in Felberbaum, it was not the constitutional issue as to right of counsel but a supposed problem as to lack of equal protection of the laws in that section 699 of the Code of Criminal Procedure required notice to defendant of his right to counsel in the up-State counties where section 699 applied, whereas the special New York City statutes then governing the Magistrates’ Courts contained nothing of the sort. The Felberbaum opinion in this court pointed out that ‘1 an alteration in the law can only be accomplished by the Legislature” (9 N Y 2d 213, 216, supra). We hold that section 41 of the Criminal Court Act as enacted in 1962 made that alteration.
The Kohler majority opinion concluded that section 41 of the new New York City Criminal Court Act as passed in 1962 means that there must be given to defendants in these traffic violation cases the same full notice as to counsel as is specifically required of other courts elsewhere by section 699 of the Code of Criminal Procedure. Among other things, section 41 contains this language: “ All sections of the code of criminal procedure consistent with this act regulating and controlling the practice and procedure of the county courts shall apply, as far as may be, to the practice and procedure in the court, and in each of the parts thereof, and shall regulate and control the practice and procedure of the court, insofar as its jurisdiction and organization will permit.” Read literally—and we see no reason to read it any other way—this incorporates the requirements of sections 188, 308 and 699 of the Code of Criminal Procedure which, as we have held in People v. Witenski (15 N Y 2d 392, supra), all mean about the same thing and all require notice to a defendant not only of his right to be represented by counsel at a trial or plea but to be notified specifically that if he cannot afford to pay a lawyer the court will assign one to him. Not only does section 41 mean this on any reasonable reading *319 but under the Witensld holding (supra) it would be unconstitutional if it were more restrictive.
The dissenting Justice at the Appellate Term in Kohler’s ease wrote that it had not been shown that section 41 of the New York City Criminal Court Act was intended to require that notice as to the right to counsel be given in the New York City Criminal Court on trials for mere offenses or infractions. He concluded, therefore, that People v. Felberbaum (9 N Y 2d 213, supra) was still the law of the Criminal Court. Even if he were correct as to this there would still remain the constitutional rule expressed in People v. Witenski (15 N Y 2d 392, supra) that, at least where there is a possibility of punishment by imprisonment, the Federal and State Constitutions require that a defendant have and be informed of the right to have counsel assigned to him if he be indigent.
In People v. Letterio defense counsel suggests another and much more sweeping reason for reversal. His submission is that any system of punishment is unconstitutional which permits imprisonment for inability to pay a fine since this favors the man with money as against the one who cannot pay. Decision of these appeals does not require us to go to this point.
The briefs for the People on both those appeals make much of the historic and presently existing difference between “ crimes ” (that is, felonies and misdemeanors) on the one hand, and 1 ‘ offenses ” or “ infractions ’ ’ on the other. These latter petty violations do, of course, differ in grade and importance from crimes but, as we remarked in Squadrito v. Griebsch (1 N Y 2d 471, 476, 477), “ We may not simply say that a ‘ traffic infraction ’ is not a ‘ crime, ’ and that that is the end of the matter ’ ’, since traffic infractions are “to be treated as misdemeanors as far as the procedure for their prosecution” is concerned (see, to the same effect, People v. Hildebrandt, 308 N. Y. 397, and People v. Firth, 3 N Y 2d 472, 474). The only effect of dubbing these minor violations as “ infractions ” or “ offenses ” is that they do not appear on the offender’s record as “ convictions of a crime ” (see Vehicle and Traffic Law, § 155).
In People v. Letterio the judgment should be reversed and the case returned to the Criminal Court for further proceedings not inconsistent with this opinion. In People v. Kohler the judgment should be affirmed.
*320 Judges Dye, Van Voorhis, Burke and Bergan concur with Judge Scileppi, Judge Bergan in a separate opinion in which Judge Dye also concurs; Chief Judge Desmond dissents and votes to affirm in an opinion in which Judge Fuld concurs.
As to Kohler: Order of the Appellate Term reversed and the judgment of the Criminal Court of the City of New York, Kings County, reinstated.
As to Letterio: Judgment affirmed.